Peter R Afrasiabi (SBN 193336)
pafrasiabi@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

John E. Lord (SBN 216111)
jlord@onellp.com
**ONE LLP**
9301 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

Maximillian N. Amster (*PHV to be applied for*)
max@bayadvocacy.com
Samuel J. Salario, Jr. (*PHV to be applied for*)
sam@bayadvocacy.com
**BAY ADVOCACY PLLC**
1700 South Mac Dill Avenue
Tampa, FL 33629
Telephone: (813) 251-6262

*Attorneys for Plaintiffs,*
K.W., a minor through K.W.'s guardian, Jillian Williams,
and Jillian Williams, individually, on behalf of themselves
and all others similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINIA

|  |  |
|---|---|
| K.W., a minor and through K.W.'s guardian, Jillian Williams; and JILLIAN WILLIAMS, individually, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>EPIC GAMES, INC., a Maryland corporation,<br><br>                    Defendant. | Case No. 3:21-cv-00976<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE AND MONETARY RELIEF**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs K.W., a minor, by and through K.W.'s guardian Jillian Williams, and Plaintiff Jillian Williams individually (collectively, "Plaintiffs"), file this Complaint against Defendant Epic Games, Inc. ("Defendant" or "Epic Games") for declaratory, injunctive, and monetary relief on behalf of themselves and a class of individuals similarly situated.  Plaintiffs allege, on personal knowledge as to their own actions and upon information, belief, and investigation of counsel as to other matters, as follows.

## NATURE OF THE ACTION

1.      Epic Games has built a multi-billion-dollar online video game business that substantially depends upon contracts with minors.  Its flagship game *Fortnite* has permeated the lives and culture of American children.  Through *Fortnite*, Epic Games has entered into millions of contracts with minors under which minors pay real-world money to by video-game currency, virtual items, and game content.

2.      Epic Games misleads and manipulates minors into handing over ever-increasing amounts of real money for virtual things.  Epic Games makes it all but impossible for minors to determine the real cost of the virtual items they buy, fails to provide them with information about their purchasing history, pressures them to buy more and more virtual things, and cuts their parents out of their purchasing decisions.  At the end, Epic Games misleads them about their right to undo their contracts and obtain a refund.

3.      The law generally holds that those who contract with minors do so at their own peril. Many of the contracts Epic Games has made with minors are subject to disaffirmance and, as a result, are voidable at the minor's election.  Still other such contracts were void at their inception.  This lawsuit seeks, on a class action basis, to vindicate the rights of minors and their parents and to obtain (1) declaratory judgments that the contracts are voidable or void, as appropriate; (2) injunctions prohibiting Epic Games' manipulative and misleading conduct toward minors; and (3) monetary relief in the form of refunds or compensatory damages.

## PARTIES

4.      Plaintiff K.W. is a natural person and resident of the state of California.  K.W. is a minor.  K.W. brings this action by and through a parent and guardian, Jillian Williams.

**COMPLAINT**

5.    Plaintiff Jillian Williams ("Williams") is a natural person and resident of the State of California.  Williams is K.W.'s mother.  She brings this suit both as guardian of K.W. and on her own behalf.

6.    Defendant Epic Games is a Maryland corporation that has its principal place of business in Cary, North Carolina.  Epic Games maintains offices in Larkspur, California and San Francisco, California, both located in the Northern District of California.  Epic Games conducts substantial business related to *Fortnite* in this District.  Epic Games' Chief Technology Officer is located in the Northern District of California.  The Creative Cinematic Director focused on *Fortnite* is located in the Northern District of California.  Epic Games employs in-house counsel in this District.  Epic Games posts employment openings in this District related in whole or in part to *Fortnite*—engineers, programmers, and other positions—on its website.  Epic Games has filed at least seven lawsuits in this District in the last five years.  At least three of those lawsuits involved *Fortnite*, and at least two of those implicated contracts to which Epic Games was a party and in which Epic Games agreed that any lawsuit was required to be brought in this District.[1]

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(d)(2)(A) because this is a proposed class action in which the matter in controversy exceeds $5 million exclusive of interest and costs and at least one member of the class of plaintiffs is a citizen of a State different from Epic Games.

8.    This Court has personal jurisdiction over Epic Games because its continuous corporate operations within California are so substantial and of such a nature as to justify suit against it on any cause of action in this State.  Further, Epic Games has sufficient minimum contacts with the State of California and this suit arises out of or relates to those contacts.  Epic Games has purposely availed itself of the benefits and protections of California law such that the exercise of jurisdiction over Epic Games would comport with due process requirements.

---

[1]  *Epic Games, Inc. v. Google LLC*, Case No. 5:20-cv-05671-NC (N.D. Cal.) (Compl., Dkt. 1, ¶ 13) (agreement providing that the exclusive venue for suit is state or federal court in Santa Clara County); *Epic Games v. Apple Inc.,* 3:20-cv-05640-EMC (N.D. Cal.) (Compl., Dkt. 1, ¶ 32) (agreement providing that any litigation would take place in the Northern District of California).

**COMPLAINT**

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Epic Games resides in this District, and there are no other defendants in this action.  Epic Games is subject to personal jurisdiction in the State of California, and its contacts with this District would be sufficient to subject it to personal jurisdiction here were this District a separate State.  Additionally, venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

**A.**    **Overview of Fortnite.**

10.     *Fortnite* is an online video game developed by and provided to players through Epic Games.  It was officially released in July 2017.  *Fortnite* can be played on multiple platforms, including a personal computer, Sony PlayStation 4, Sony PlayStation 5, Xbox One, Xbox Series X/S, Nintendo Switch, and Android.

11.     As relevant here, *Fortnite* can be played in one of two modes: *Battle Royale* or *Save the World*.  *Battle Royale* is a player-versus-player game in which up to one hundred players airdrop into an imaginary territory where they get weapons and other in-game items to attack and eliminate other players.  The last player—or duo or squad of players—alive at the end is the winner.  *Save the World* is a player-versus-environment game set after a fluke storm causes the world's population to disappear, with the survivors being attacked by zombie-like "husks".  The players collect in-game items, save survivors, and perform various missions.

12.     *Fortnite Battle Royale* is a free-to-play or "freemium" game in which the game itself does not cost the player anything.  *Fortnite Save the World* is a pay-to-play game.  Epic makes most of its money from the sale of in-game content that players purchase electronically while in the game environment.  That content includes items that are used or enjoyed during game play, such as "skins" (uniforms), "gliders" (parachutes), "emotes" (dance moves), materials, ammunition, and other things for use during game play.  It also includes additional game content or play modes—for example, the "Battle Pass" in *Battle Royale*, which offers 100 tiers of in-game extras (skins, emotes, V-bucks, etc.) over the course of a game season.

**COMPLAINT**

13.     Players make in-game purchases of items and game content using what Epic Games represents to its players is a "virtual currency" called V-Bucks.  A player acquires V-Bucks by paying for them in-game using real-world currency by, for example, paying for V-Bucks in U.S. dollars using a debit card, a credit card, or a gift card.  V-Bucks are used to buy items and game content, which are offered for sale for a price stated in V-Bucks.

14.     Regardless of the platform used or the game mode played, the experience of all *Fortnite* players with respect to in-game purchases is the same in all material respects.  Real-world money is used to purchase V-Bucks and V-Bucks are used to purchase in-game items and game content priced in V-Bucks, which are offered for sale and advertised in the same way.

15.     This model has been spectacularly profitable for Epic Games.  In August 2020, Epic Games announced that Fortnite had over 350 million registered players who, collectively, had spent 3.2 billion hours in the game.[2]   It is estimated that Epic Games earned $2.4 billion in revenue from *Fortnite* in 2018 and $1.8 billion in revenue from *Fortnite* in 2019.[3]   It is estimated that V-Bucks purchases represent 83% of all spending in *Fortnite*.[4]

## B.   *Fortnite* Targets Minors.

16.     *Fortnite* has a huge number of players who are children.  Although Epic does not report the number of *Fortnite* players who are children, a 2018 analysis comparing players of *Fortnite Battle Royale* to players of a competitor game reported that 53% of players who played *Fortnite* exclusively were between 10 and 25 years old.[5]   Another 2018 survey reports that 61% of teenagers have played *Fortnite*.[6]   Of the six top *Fortnite* players in the world, five—including the first-place player—were minors as of August 2020, and four remain minors today.  It is fair to

---

[2]   *See* https://twitter.com/FortniteGame/status/1258079550321446912 (May 6, 2020) (last accessed Feb. 4, 2021).

[3]   *See* Iqbal, Mansoor, <u>Fortnite Usage and Revenue Statistics (2020)</u>, Business of Apps (Jan. 26, 2021), available at https://www.businessofapps.com/data/fortnite-statistics/#3 (last accessed Feb. 6, 2021).

[4]   *Id.*

[5]   Meehan, Orla, <u>A Profile of the Battle Royale Player and How They Compare to Other Gamers</u>, Newzoo (May 22, 2018), available at https://newzoo.com/insights/articles/a-profile-of-the-battle-royale-player-and-how-they-compare-to-other-gamers/ (last accessed Feb. 4, 2021).

[6]   Common Sense Media, <u>Fortnite Frenzy</u> (2018), available at https://www.commonsensemedia.org/sites/default/files/uploads/landing_pages/fortnite_frenzy_infographic_release.pdf (last accessed Feb. 6, 2021).

**COMPLAINT**

estimate from these data that there are millions of players who are, or were at some point since *Fortnite* was released, under the age of 18.  One reason why is that the game functions as a social space where children go to interact virtually with their minor friends.

17.    *Fortnite* is designed to draw minors into the game and keep them there.  Indeed, substantial public accounts document aspects of the game that draw minors in and subsequent conduct by minors indicative of addiction to playing the game.[7]

18.    Epic Games knows that a large number of *Fortnite* players are minors and that minors are particularly susceptible to becoming hooked on the game.  Epic Games has designed *Fortnite* to encourage continuous play and, thereby, to encourage minors to continuously make in-game purchases.

**C.    *Fortnite* Manipulates and Misleads Players, Especially Minors, Regarding V-Buck Purchases.**

19.    Players can earn V-Bucks while playing the game or purchase them with real money.  Earning V-Bucks through game play is unreasonably difficult because of the amount of playtime required and because of the randomness with which V-Bucks are awarded.  By ensuring that earning V-Bucks through game play is difficult and time-consuming, *Fortnite* leaves players with no real option except to pay for V-Bucks with real money if they want to acquire items and game content in *Fortnite*.

20.    Epic Games' stated policy is that V-Bucks are not refundable.  It does not matter who bought them, how they paid, whether they changed their mind, or whether they have any further need for the V-Bucks (e.g., have stopped playing the game).  Epic does not disclose to the player at the time real money is exchanged for V-Bucks that the V-Bucks are not refundable.

21.    Epic Games uses this manner of regulating in-game purchases to manipulate and mislead its players, especially minors.  First of all, Epic Games fixes the conversion rate for V-Bucks

---

[7]  *See,* e.g., Wynarczk, Natasha, <u>Fortnite 'designed to be addictive' for kids</u>, The New York Post (June 13, 2019), available at  https://nypost.com/2018/06/13/fortnite-designed-to-be-addictive-for-kids/ (last accessed Feb. 5, 2021); Haller, Sonja, <u>'This game is like heroin:' Fortnite addiction sending kids to gaming rehab</u>, USA Today (Dec. 9, 2018), available at https://www.usatoday.com/story/life/allthemoms/2018/12/09/fortnite-addiction-sending-kids-gaming-rehab/2221149002/ (last accessed Feb. 5, 2021).

at prices that make it very difficult for the player to convert V-Bucks to dollars, especially in the fast-paced environment of the game.  In that way, Epic Games conceals from the player how much real money he or she is spending to get items or game content in-game.

22.     The smallest quantity of V-Bucks available for purchase is 1000 V-Bucks for $7.99, a ratio of .00799 dollars to one V-Buck.  Epic Games encourages larger V-Buck buys by offering bonus V-Bucks or other incentives.  For example, Epic Games has sold a package advertised at 10,000 V-Bucks for $99.99 with a 3,500 V-Buck bonus, which produces an exchange ratio of .0074 dollars to one V-Buck.  Epic Games could choose to let players purchase items and game content in dollars or have a one-to-one conversion rate for dollars to V-Bucks, but it does not.

23.     Because Epic Games chooses this complicated means of converting real dollars to V-Bucks and then prices items and game content only in V-Bucks, a player cannot determine the real cost of an in-game purchase without first (a) determining the conversion rate at which she bought the V-Bucks, which will differ depending at least on how many V-Bucks the player bought, the time at which she bought them, and the quantity that she bought and then (b) multiplying the cost of the item in V-Bucks by that conversion rate.  As a pair of economic scholars has observed, it is "clear that Fortnite has picked the right conversion rates to create a high degree of 'money illusion'" so that a player's ability to determine the cost of a purchase is "reduced to a large extent."[8]  This is especially true for minors.

24.     Epic Games' concealment of the real cost of in-game purchases using V-Bucks is exacerbated by the fact that Epic Games makes the process of buying V-Bucks very fast and very easy.  All a player needs to do is enter and save a method of paying for V-Bucks with real dollars—a credit card, a debit card, a gift card, etc.—and he or she can buy V-Bucks in *Fortnite* without reflection and at the push of a button.  As a result, a minor can use his or her parent's credit card or his or her own money from gift cards to make a virtually limitless number of purchases of V-Bucks, items, and game content in *Fortnite*.

---

[8]  Schöber, Timo and Stadtmann, Georg, <u>Fortnite: The Business Model Pattern Behind the Scene</u> (January 15, 2020). European University Viadrina Frankfurt (Oder) Department of Business Administration and Economics Discussion Paper No. 415, available at SSRN: https://ssrn.com/abstract=3520155.

**COMPLAINT**

25.     This combination of easy purchasing at a concealed cost explains why many players, especially minors, are willing to spend hundreds or even thousands of dollars on items and game content in *Fortnite*.  If the real cost in actual dollars of in-game purchases was truthfully disclosed to the player, instead of being concealed from the player through Epic Games' creation and use of artificial exchange rates for V-Bucks that serve no legitimate purpose, most players would think that spending hundreds, let alone thousands of dollars, on virtual items in a video game was a colossal waste of money.

26.     Epic Games also manipulates its players, especially minors, by setting the price of items and game content available for in-game purchases at amounts that effectively require the player to buy more V-Bucks.  The amount of V-Bucks sold in a package does not correspond to the price in V-Bucks of items and game content for sale in *Fortnite*.  The result is that players are left short on V-Bucks for an in-game purchase and need to buy more V-Bucks to complete it, either because they did not have enough V-Bucks to begin with or because they had an insufficient number left over after a previous purchase.  For example:

> [t]he Battle Pass cannot be bought directly for real currency.  In a first step, the gamer has to exchange real money into V-Bucks.  The smallest package of 1,000 V-Bucks is available for 9.99 EUR.  It becomes clear that after the transaction is performed, an amount of 50 V-Bucks is a kind of leftover because no item can be bought for the price of 50.  The item with the lowest price . . . is a dance move (emote), which is available for 200 V-Bucks.  When looking at the prices in the online shop, not a single item is sold for the price of 1,000 V-Bucks (smallest package).[9]

27.     Furthermore, Epic does not provide players with a history of their purchases of items or game content in *Fortnite*.  Epic Games benefits from this lack of transparency because, without the ability to see what they have purchased and at what price in the aggregate, the player can continue to purchase items and game content uninhibited by knowing the amount the player has already spent.

28.     With specific respect to V-Bucks purchases by minors, *Fortnite* does not contain any parental notifications or controls to inhibit minors from continually buying V-Bucks.  Epic Games does not require that a parent consent to a purchase; nor does it send a parent a receipt or other

---

[9] *Id.*

**COMPLAINT**

notification when a purchase of V-Bucks is made.  Epic Games knows that minors lack the impulse control and judgment of adults, and it has designed a system of V-Bucks purchases that induces minors to make substantial purchases of V-Bucks.  Leaving parents without control over or even information about those purchases ensures that minors will continue to make them.

**D.**    ***Fortnite* Manipulates and Misleads Players, Especially Minors, Into Making In-Game Purchases of Items and Game Content.**

29.    *Fortnite* misleads and manipulates minors into making purchases of V-Bucks and, from there, items and game content in *Fortnite* without understanding the economic reality of those transactions.  Minors often make purchases using credit card or debit card information for their parents' accounts that they store on whatever gaming platform they use to play *Fortnite*.  Parents whose credit and debit card information is stored in this way likely do not know that those allowed to access the platform can make in-game purchases in *Fortnite* using their money.

30.    While their minor child is playing *Fortnite*, parents may not be closely monitoring their credit card, debit card, or bank account information.  In that way, a minor's in-game purchases can go undetected.  And because Epic Games does not have any parental control or notification system, parents in these circumstances have no reason to be scouring their account statements for *Fortnite* purchases by their minor children.

31.    Minors also use their own funds to purchase V-Bucks and, from there, items and game content in *Fortnite*.  This commonly takes the form of transactions made using gift cards expressly for V-Bucks or for third-party marketplaces like the PlayStation store.  Minors may receive those gift cards for birthdays, holidays, and the like or purchase them with their own money in the real world.

32.    Epic Games' stated policy so strictly limits the refundability of in-game purchases of items and game content that they are, for all intents and purposes, nonrefundable.  The Battle Pass is nonrefundable on any terms.  The Starter Pack—bundles of cosmetic items and V-Bucks—are nonrefundable on any terms.  Weekly items—items available for a limited time—are not refundable on any terms.  At the point at which items like these are sold, however, the fact that they are not refundable is either not disclosed or is disclosed in small and inconspicuous text that most players,

**COMPLAINT**

especially minors, would not take note of.   Epic Games thus misleads *Fortnite* players, especially minors, by not including visible or prominent language explaining that these purchases are not refundable.

33.   Epic Games' stated policy with respect to cosmetic items such as skins, gliders, and emotes is that they are refundable, but that is not accurate.  Epic Games' stated policy is that each *Fortnite* account is limited to a lifetime maximum of three refunds total, that those three refunds each must be requested within thirty days of purchase, and that those refunds are payable in V-Bucks.  Epic Games' stated policy does not allow a refund of an in-game item for the real dollars that purchase actually cost.

34.   Epic Games uses many tactics to manipulate players, especially minors, to purchase items and game content in *Fortnite*.  One is time pressure.  For example, the in-game shop in *Fortnite* has sections called "Special Items" or "Daily Items" in which an on-screen clock shows that the items offered for sale will be available for only a limited number of hours.  Because a player is never sure whether the items will be offered again and is sure that the item is on offer for only a short time, she is placed under pressure to buy the item immediately.

35.   Epic Games also manipulates players by getting them to "keep up with the Joneses." Epic Games pushes new content to *Fortnite* and updates to *Fortnite* very rapidly, such that in-game items purchased with V-Bucks become stale quickly.  Further, because players frequently play as teams, a gamer can see some of the items her teammates have and thereby learn about what they buy in the in-game shop, which can induce the player to buy those items to keep up with her peers. Because players are frequently peers, they discuss what kind of items and game content they buy with one another.  This incentive to buy to match pace with one's peers is especially strong with minors, who are more likely to be influenced by the desire to belong or for peer acceptance than are adults.

36.   Epic Games also induces minors to play *Fortnite* for long hours to advance their levels in the game, thereby inducing in-game purchases when minors are fatigued.  Reports of minors playing *Fortnite* for excessive amounts of time and at the expense of other activities are not uncommon.

**COMPLAINT**

37.     As it does with V-Buck purchases, Epic Games also manipulates minors in to making purchases of items and game content by making those purchases very easy to execute without reflection, by not providing an in-game purchase history, and by not including any parental control or notification protocols.   The nonrefundability of in-game purchases makes these practices especially unfair with respect to transactions by minors.

**E.    *Fortnite* Misleads Minors and Their Parents About In-Game Purchases.**

38.     Under California law and the law of most, if not all, other states, minors are allowed to disaffirm—i.e., to avoid—contracts that they have entered into.   Thus, contrary to Epic Games' stated policy, a minor can request a refund without conditions.   Epic Games' stated policy and its application of same to minor players is misleading because it communicates that in-game purchases are categorically nonrefundable (or effectively nonrefundable) and fails to disclose that minors are permitted to obtain refunds upon disaffirmance.

39.     Under California law, a minor may not enter into a contract relating to any personal property not in the immediate possession or control of the minor.   Such contracts are void and, as such, amounts paid pursuant to those contracts are refundable.   Epic Games stated policy and its application of same to minor players is false and misleading because it communicates that in-game purchases are categorically nonrefundable (or effectively nonrefundable) and fails to disclose that purchases by minors using personal property not in the minor's immediate possession or control— e.g., a parent's debit or credit card—are refundable.

40.     Epic Games misleads players, especially minors, as to the refundability of purchases of V-Bucks, items, and game content by not stating that the purchase is nonrefundable or by stating that it is nonrefundable in very small font in an inconspicuous location.

41.     Epic Games misleads players, especially minors, as to the real cost of purchases of V-Bucks, items, and game content by making the conversion rate for dollars to V-Bucks needlessly complex and pricing purchases of items and game content in V-Bucks, thereby concealing the actual cost of these purchases from the player.

42.     Epic Games misleads players, especially minors, as to the current value of an item or game content by not disclosing when newer related content will be published.  Minors have no way

**COMPLAINT**

of knowing, for example, if an item they are purchasing today will become stale in a short period of time when newer content is published.

**F.**    **Plaintiffs' Experience with *Fortnite.***

43.    Plaintiff K.W. began playing *Fortnite* in 2018, at either nine or ten years old.  K.W. recalls clicking through Epic Games' End User License Agreement ("EULA").  As a minor, K.W. did not understand what he was clicking and did not understand the legal terms of the EULA.  K.W. played *Fortnite* on a personal computer, Sony PlayStation 4, Xbox, and iPhone.

44.    K.W. has made multiple purchases of V-Bucks in *Fortnite* using K.W.'s own money, though gift cards and otherwise.

45.    K.W. has made at least one purchase of V-Bucks in *Fortnite* using Williams's credit card.  Williams would not have authorized that purchase because her approach to K.W.'s game playing has been to not give K.W. funds to buy purchases of items and game content.

46.    K.W. used V-Bucks to purchase items and game content in *Fortnite*, including, but not limited to, skins and Battle Passes.

47.    K.W. has been confused about the actual cost of real dollars of certain purchases of items and content in *Fortnite* because Epic Games concealed that information from K.W. as described in this Complaint.  K.W. has purchased items and content in *Fortnite* K.W. would not otherwise have purchased had K.W. known the actual cost of the item.

48.    Epic Games did not provide K.W. with a purchase history regarding V-Bucks, items, or game content.  Epic Games did not provide Williams or any other responsible adult with notification of or controls over K.W.'s purchases.

49.    K.W. has attempted to cancel or seek a refund for certain purchases of in-game items and content, but he was not able to do so because of Epic Games' refund policy.

50.    Before consulting with counsel about the matter, K.W. was not aware of the right of a minor to disaffirm contracts like purchases of V-Bucks and in-game items and content and to obtain a refund.  K.W. relied on the nonrefundability of *Fortnite* purchases.

**COMPLAINT**

51.     Before consulting with counsel about the matter, Williams was not aware of California law providing that certain contracts by minors are void.  Williams relied on the nonrefundability of K.W.'s *Fortnite* purchases.

52.     K.W. has made purchases of items in *Fortnite* under time pressure as described in this Complaint.  K.W. has later regretted those purchases.

53.     K.W. has made purchases of items in *Fortnite* in order to keep up with his peers in the game.  K.W. has later regretted those purchases.

54.     As of the date of the filing of this Complaint, K.W. has disaffirmed all of K.W.'s contracts with Epic Games concerning *Fortnite*, including any terms of service, license agreements, purchases of V-Bucks, and purchases of items and content.

55.     All conditions precedent to the maintenance of this action have occurred, been performed, or have been waived.

## CLASS ACTION ALLEGATIONS

56.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, K.W., by and through Williams, K.W.'s guardian, brings this case on behalf of the following class (the "Minor Class"):

> All minors in the United States who, at any time between July 27, 2017 and the present, had a *Fortnite* account that they used to play *Fortnite* on any device and in any mode and (a) exchanged in-game V-Bucks for any item or game content, or (b) made a purchase of V-Bucks, items, or game content for use within *Fortnite*.

Within the Minor Class is a subclass of minors who met the Minor Class definition while residing in California (the "California Minor Subclass).

57.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Williams individually brings this case on behalf of the following class (the "California Parent Class"):

> All persons who, at any time between July 27, 2017 and the present, were the parent or guardian of a minor who, while residing in California, had a *Fortnite* account used to play *Fortnite* on any device and in any mode and who, using funds supplied in any form by the parent or guardian, (a) exchanged V-Bucks for any item or game content, or (b) made a purchase of V-Bucks, items, or game content for use within *Fortnite*.

58.     The following persons are excluded from the proposed classes: (a) Epic Games, (b) any parents, subsidiaries, or affiliate of Epic Games, (c) any officer, director, or employee of Epic

**COMPLAINT**

Games or any parent, subsidiary, or affiliate thereof and any members of such a person's immediate family, and (d) any judicial officer assigned to determine this case and any member of such a person's immediate family.

59.     The proposed classes meet the requirements of subsection (a) and subsection (b)(2), (b)(3) and/or (c)(4) of Rule 23 of the Federal Rules of Civil Procedure.

(a)     **_Numerosity_**:  The members of the classes are so numerous that joinder is impracticable as contemplated by Fed. R. Civ. P. 23(a)(1).  Although Plaintiffs cannot know the exact number of class members without access to Defendant's busines records, Plaintiffs estimate from public information that class members number in the millions.  Information sufficient to identify and notify members of the class of the existence of this action and their rights with respect to it may be derived from business records maintained by Epic Games.

(b)     **_Commonality/Predominance_**:  There are questions of law or fact common to the classes as contemplated by Fed. R. Civ. P. 23(a)(2) and those questions predominate over any questions affecting only individual members of the classes as contemplated by Fed. R. Civ. P. 23(b)(3).  Those questions include, but are not limited to:

(i)     Whether minors are entitled under applicable law to disaffirm their purchases of V-Bucks, items, and game content in _Fortnite_;

(ii)     Whether the purchases of V-Bucks, items, and game content in _Fortnite_ by California minors made using the payment information of a parent or guardian are void under California law;

(iii)     Whether Epic Games adequately discloses that purchases of V-Bucks, items, and game content are nonrefundable (or effectively nonrefundable);

(iv)     Whether Epic Games misleads minors into believing that their purchases of V-Bucks, items, and game content are not refundable;

(v)     Whether Epic Games misleads minors by concealing from them the actual cost of purchases made using V-Bucks;

(vi)     Whether Epic Games' conduct violates state consumer protection laws;

**COMPLAINT**

(vii)    Whether K.W., Williams, and the members of the proposed classes were damaged by Epic Games' conduct; and

(viii)    Whether K.W., Williams, and the other members of the proposed classes are entitled to restitution or other relief.

(c)    ***Typicality***:  Plaintiffs' claims are typical of the claims of those of the classes as a whole as contemplated by Fed. R. Civ. P. 23(a)(3).  The *Fortnite* experience is, in the essentials relevant to this case, identical for all members of the classes.  Virtual currency is offered and sold in the same way.  In-game merchandise is offered and sold in the same way.  And Defendant's refund policies operate in the same way.

(d)    ***Adequacy***:  Plaintiffs will fairly and adequately protect the interests of the classes.  Plaintiffs interests do not conflict with the interests of the other members of the proposed classes and they have retained counsel who are competent and experienced in complex class action litigation.

(e)    ***Declaratory and injunctive relief***:  Epic Games has acted or refused to act on grounds that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the classes as a whole, as contemplated by Fed. R Civ. P. 23(b)(2).  The wrongful conduct of Epic Games as alleged in this Complaint is generally applicable to the classes as a whole, and the classes seek final declaratory and injunctive relief to remedy that conduct.

(f)    ***Superiority***:  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy as contemplated by Fed. R. Civ. P. 23(b)(3).  The size of the economic injury suffered by class members is small compared to the expense of individualized adjudication of the claims of the likely millions of members of the classes, such that it would not be practicable for class members to seek redress from Defendant's wrongful conduct on an individual basis.  To the extent there are any difficulties in managing a class action here, they pale in comparison to the expense and risk of inconsistent adjudication inherent in prosecuting millions of individual claims to judgment.

(g)    ***Issue certification***:  Plaintiffs reserve the right to seek certification of the classes with respect to particular issues as contemplated by Fed. R. Civ. P. 23(c)(4).

**COMPLAINT**

(h)     **Subclasses:** Plaintiffs reserve the right to seek the certification of subclasses within the classes defined herein in such circumstances as may be appropriate.

## **COUNT I – DECLARATORY JUDGMENT – 28 U.S.C. § 2201**

### **(Disaffirmance of In-Game Purchases by K.W. and the Minor Class)**

60.     The allegations of paragraphs 1 through 59 of this Complaint are incorporated and realleged as though fully stated herein.  This count is brought on behalf of Plaintiff K.W. and the Minor Class.

61.     *Fortnite* is intended to be played by minors, and Epic Games knows that it is dealing with minors when it offers V-Bucks, items, and game content for sale in *Fortnite*.  Each purchase of V-Bucks, items, or game content constitutes a contract between the minor and Epic Games.

62.     Under section 6710 of the California Family Code, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards.  Under the law of most of the United States, minors enjoy a materially identical right of disaffirmance.

63.     The minor may disaffirm the contract, or a guardian may disaffirm the contract on the minor's behalf.  No particular action is required to constitute a disaffirmance.  As of the date of the filing of this Complaint, K.W. has disaffirmed all purchases of V-Bucks, items, and game content K.W. has made while playing *Fortnite*.

64.     The contracts of K.W. and members of the Minor Class and Epic Games are subject to disaffirmance and are thus voidable, a fact that Epic Games disputes.  Accordingly, there is an actual controversy between the parties, such that a declaratory judgment is appropriate.

65.     This count for declaratory judgment seeks a declaration that: (a) this case may be maintained as a class action on behalf of the Minor Class; (b) each purchase of V-Bucks, items, and game content in *Fortnite* by K.W. and the members of the Minor Class is subject to disaffirmance and is therefore voidable at the option of the minor or his or her guardian; (c) K.W. and any other member of the Minor Class who elects to disaffirm and thereby to void their purchases are entitled to restitution of the sums paid and interest thereon; (d) K.W. and the Minor Class are entitled to an award of attorney's fees and costs incurred in the prosecution of this action; and (e) K.W. and the Minor Class are entitled to such further relief as may be just and proper.

## COUNT II – DECLARATORY JUDGMENT – 28 U.S.C. § 2201

### (Contracts Void as to Williams and the California Parent Class)

66.     The allegations of paragraphs 1 through 59 of this Complaint are incorporated and realleged as though fully stated herein.  This count is brought on behalf of Plaintiff Jillian Williams and the Parent Class.

67.     *Fortnite* is intended to be played by minors, and Epic Games knows that it is dealing with minors when it offers V-Bucks, items, and game content for sale in *Fortnite*.  Each purchase of V-Bucks, items, or game content constitutes a contract between the minor and Epic Games.

68.     Under section 6701(c) of the California Family Code, a minor may not make a contract relating to any personal property not in the immediate possession or control of the minor. Contracts made in violation of this statute are void.

69.     When a minor uses the funds of a parent or guardian to make a purchase of V-Bucks, items, or game content in *Fortnite*—such as through a parent's credit or debit card—he or she is delegating to Epic Games the power to debit or withdraw funds in the possession or control of the minor's parents.  Accordingly, the in-game purchases of minors using the funds of their parents or guardians are void, and the parents and guardians are entitled to a refund.

70.     Any contracts for *Fortnite* purchases K.W. made using Williams's credit card are void, and Williams is entitled to a refund.  Because Epic Games will not permit Williams to claim a refund, there is an actual controversy between the parties, such that a declaratory judgment is appropriate.

71.     This count for declaratory judgment seeks a declaration that: (a) this case may be maintained as a class action on behalf of the California Parent Class; (b) each purchase of V-Bucks, items, or game content by K.W. and the children or wards of the California Parent Class are void; (c) Williams and the members of the California Parent Class are entitled to restitution of the sums paid and interest thereon; (d) Williams and the California Parent Class are entitled to an award of attorney's fees and costs incurred in the prosecution of this action; and (e) Williams and the California Parent Class are entitled to such further relief as may be just and proper.

///

**COMPLAINT**

## COUNT III – VIOLATIONS OF CALIFORNIA BUSINESS

## AND PROFESSIONAL CODE § 17200, ET SEQ.

### (by K.W. and the California Minor Subclass)

72.     The allegations of paragraphs 1 through 59 of this Complaint are incorporated and realleged as though fully stated herein.  This count is brought on behalf of Plaintiff K.W. and the California Minor Subclass.

73.     K.W. and the Class Members have standing to pursue a cause of action against Epic Games for unlawful and unfair business acts or practices because they have suffered an injury-in-fact and lost money due to the conduct of Epic Games as described in this Complaint.

74.     Epic Games' conduct toward K.W. and the California Minor Subclass is unlawful under section 17200 of the California Business and Professions Code because it is in violation of the legal rights of K.W. and the California Minor Subclass to disaffirm their contracts with Epic Games for the purchase of V-Bucks, items, and game content.

75.     Epic Games' conduct toward K.W. and the California Minor Subclass is unfair under section 17200 of the California Business and Professions Code because Epic Games' (1) requiring that in-game purchases be made in V-Bucks, (2) setting of the conversion ratios for dollars to V-Bucks, and (3) pricing of items and game content in V-Bucks conceals from minors the actual cost of their in-game purchases.  The harm to the minor consumer from these practices is obvious and severe: Minors are disabled from understanding the actual cost of their *Fortnite* in-game purchases, which prompts them to continually dump money into V-Bucks, items, and in-game content.  The utility of Epic Games' conduct is nonexistent.  Furthermore, Epic Games' conduct in this respect is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

76.     Epic Games' conduct toward K.W. and the California Minor Subclass is also unfair because Epic Games' does not provide minor players with historical information about their in-game purchases or provide for parental controls or notifications about in-game purchases.  Again, the harm to the minor consumer from these practices is obvious and severe: Minors are manipulated into making ever-increasing numbers of purchases of V-Bucks, items, and game content in *Fortnite* without being able to see their historical transactions and without the correcting judgment of an adult

**COMPLAINT**

of greater judgment and caution. The utility of Epic Games' conduct is nonexistent. Furthermore, Epic Games' conduct in this respect is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

77.     Pursuant to section 17203 of the California Business and Professions Code, K.W. and the California Minor Subclass seek an injunction prohibiting Epic Games from continuing to engage in the conduct described above, or any other act prohibited by law.

78.     K.W. and the California Minor Subclass also seek rescission and an order requiring Epic Games to make full restitution and to disgorge its ill-gotten gains wrongfully obtained from K.W. and the California Minor Subclass as permitted by section 17203 of the California Business and Professions Code.

79.     Additionally, K.W. and the California Minor Subclass seek an order requiring Epic Games to pay attorneys' fees pursuant to section 1021.5 of the California Civil Code.

## COUNT IV – VIOLATIONS OF CONSUMER PROTECTION LAWS

### (by K.W. and the Minor Class and Williams and the California Parent Class)

80.     The allegations of paragraphs 1 through 59 of this Complaint are incorporated and realleged as though fully stated herein. This count is brought on behalf of Plaintiff K.W. and the Minor Class and Williams and the California Parent Subclass.

81.     K.W. and the Class Members have standing to pursue a cause of action against Epic Games for unlawful and unfair business acts or practices because they are consumers who have suffered an injury-in-fact and lost money due to the conduct of Epic Games as described in this Complaint.

82.     Under section 17200, et seq., of the California Business and Professions Code and substantively similar consumer protection statutes in other states in which members of the Minor Class play *Fortnite*, Epic Games is legally prohibited from engaging in fraudulent business acts or practices and deceptive, untrue, or misleading advertising.

83.     Epic Games' conduct is fraudulent and misleading toward K.W. and the members of the Minor Class because it untruthfully represents to them that their purchases of V-Bucks, items, and game content are nonrefundable (or effectively nonrefundable), when in fact those purchases

**COMPLAINT**

are fully refundable pursuant to the rights of K.W. and the Minor Class to disaffirm their contracts under applicable law.  Those misrepresentations misled K.W. and are likely to mislead the public.

84.    Epic Games' conduct is fraudulent and misleading toward Williams and the members of the California Parent Class because it untruthfully represents to them that purchases of V-Bucks, items, and game content by their children or wards are nonrefundable (or effectively nonrefundable), when in fact those purchases are fully refundable because those contracts are void under section 6701(c) of the California Civil Code.

85.    Epic Games knew or should have known that its representations regarding in-game purchases by minors were false and misleading.

86.    Pursuant to section 17203 of the California Business and Professions Code and other similar state law, K.W. and the Minor Class and Williams and the California Parent Class seek an injunction prohibiting Epic Games from continuing to engage in the conduct described above.

87.    K.W. and the Minor Class and Williams and the California Parent Class also seek rescission and an order requiring Epic Games to make full restitution to them as permitted by section 17203 of the California Business and Professions Code.

88.    Additionally, K.W. and the Minor Class and Williams and the California Parent Class seek an order requiring Epic Games to pay attorneys' fees pursuant to section 1021.5 of the California Civil Code.

### COUNT V – NEGLIGENT MISREPRESENTATION

### (By K.W. and the Minor Class and Williams and the California Parent Class)

89.    The allegations of paragraphs 1 through 59 of this Complaint are incorporated and realleged as though fully stated herein.  This count is brought on behalf of Plaintiff K.W. and the Minor Class and Williams and the California Parent Class.

90.    Epic Games had a duty to provide honest and accurate information to K.W. and the Minor Class so that they could make informed decisions about in-game purchases.  K.W. and the Minor Class repeat the allegations in paragraphs 19 through 37 to show how Epic Gamesa instead misled minors on these subjects.

91.     Epic Games misrepresented material facts to K.W. and the Minor Class and Williams and the California Parent Class by not allowing refunds in circumstances in which the law expressly allows it.

92.     Epic Games knows, or in the exercise of reasonable diligence should know, that members of the Minor Class and the California Parent Class would be misled by its conduct.

93.     K.W. and the Minor Class and Williams and the California Parent Class have justifiably relied on Epic's misrepresentations and have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, K.W., Williams, the Minor Class and the California Parent Class respectfully request that the Court:

1.     Certify the Minor Class and the California Parent Class;

2.     Appoint K.W., Williams, and their counsel to represent the classes;

3.     Issue a declaratory judgment that the contracts between K.W. and the Minor Class (including the California Minor Subclass) for the purchase of V-Bucks, items, and game content in connection with *Fortnite* are subject to disaffirmance and voidable, and that upon disaffirmance, K.W. and the members of the Minor Class are entitled to a refund;

4.     Issue a declaratory judgment that contracts for the purchase of V-Bucks, items, and game content in connection with *Fortnite* between minors whose parents or guardians are members of the California Parent Class are void and that the parents are entitled to restitution;

5.     Issue an injunction prohibiting Epic Games from engaging in the unlawful, unfair, and deceptive conduct described in Counts III and IV of this Complaint;

6.     Award K.W. and the Minor Class and Williams and the California Parent Class restitution of all sums paid pursuant to the void or voidable contracts described in this Complaint;

7.     Award K.W. and the Minor Class and Williams and the California Parent Class compensatory damages in an amount to be determined at trial;

8.     Award attorneys' fees to K.W. and Williams and the members of the proposed classes;

**COMPLAINT**

9.      Tax costs to Epic Games; and

10.     Grant K.W., Williams, and the members of the proposed classes such other and further relief as the court deems proper.

Dated: February 8, 2021                              **ONE LLP**

                                         By:   */s/ John E. Lord*
                                               Peter R. Afrasiabi
                                               John E. Lord

                                               **BAY ADVOCACY PLLC**
                                               Maximillian N. Amster (*PHV to be applied for*)
                                               Samuel J. Salario, Jr. (*PHV to be applied for*)

                                               *Attorneys for Plaintiffs,*
                                               K.W., a minor through K.W.'s guardian, Jillian
                                               Williams, and Jillian Williams, individually, on
                                               behalf of themselves and all others similarly
                                               situated

**COMPLAINT**

1

**<u>DEMAND FOR JURY TRIAL</u>**

2
Plaintiffs demand a trial by jury on all issues so triable.

3

4
Dated: February 8, 2021                    **ONE LLP**

5
                            By:  */s/ John E. Lord*

6
                                 Peter R. Afrasiabi
                                 John E. Lord

7
                                 **BAY ADVOCACY PLLC**

8
                                 Maximillian N. Amster (*PHV to be applied for*)
                                 Samuel J. Salario, Jr. (*PHV to be applied for*)

9
                                 *Attorneys for Plaintiffs,*

10
                                 K.W., a minor through K.W.'s guardian, Jillian
                                 Williams, and Jillian Williams, individually, on

11
                                 behalf of themselves and all others similarly
                                 situated

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**
