MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone:     415-591-7500
Facsimile:     415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036-2714
Telephone:     212-248-3140
Facsimile:     212-248-3141

Attorneys for Defendant
EPIC GAMES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| K.W., a minor and through K.W.'s guardian, Jillian Williams, and JILLIAN WILLIAMS, individually, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Defendant. | Case No. 3:21-cv-00976-CRB<br><br>**DEFENDANT EPIC GAMES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY ACTION**<br><br>Date:     April 2, 2021<br>Time:    10:00 a.m.<br>Ctrm:    6 – 17th Floor<br>Judge:   Hon. Charles R. Breyer<br><br>Action Filed:   February 8, 2021<br>Trial Date:     None set |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

RESPONSE TO "FACTS" PRESENTED IN PLAINTIFFS' OPPOSITION ............................... 3

ARGUMENT ................................................................................................................................ 6

    I.    Plaintiffs' Meritless Attacks On the Zanca Settlement Should Be Presented To the Zanca Court As an Objection, Not To This Court As a Collateral Attack. ................................................................................................................ 6

    II.    Injunctions of Parallel Litigation During the Fairness Process, and Stays of Parallel Litigation In Deference To It, Are Routine In Class Action Practice. ............................................................................................................. 7

        A.    The North Carolina Court Correctly Enjoined Parallel Litigation. ............. 7

        B.    This Court Should Stay Plaintiffs' Case With Or Without Regard to the Zanca Court's Injunction Order. ......................................................... 9

    II.    Plaintiffs Are In No Position To Challenge The Zanca Settlement, Or To Litigate In This Court, Because Their Claims Are Moot. ..................................... 12

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Baldwin-United*,
  770 F.2d 328 (2d Cir. 1985)..................................................................................................8

*Brown v. Abercrombie & Fitch Co.*,
  No. CV 14-1242 JGB, 2015 WL 12778338 (C.D. Cal. June 24, 2015) .................................10

*Castillo v. Seagate Tech. LLC*,
  No. 3:16-cv-1958-RS, 2017 WL 4798611 (N.D. Cal. Oct. 19, 2017) .......................................7

*Chen v. Allstate Ins. Co.*,
  819 F.3d 1136 (9th Cir. 2016).................................................................................................13

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800 (1976)................................................................................................................10

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002)....................................................................................................11

*Donovan v. City of Dallas*,
  377 U.S. 408 (1964)..................................................................................................................8

*Epstein v. MCA, Inc.*,
  179 F.3d 641 (9th Cir. 1999).....................................................................................................6

*Gillis v. Whitley's Disc. Auto Sales, Inc.*,
  70 N.C. App. 270 (1984).........................................................................................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...................................................................................................7

*Harris v. Pernsley*,
  755 F.2d 338 (3d Cir. 1985)....................................................................................................11

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002)...................................................................................................10

*I.B. ex rel. Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ...............................................................................12, 13

*In re JP Morgan Chase LPI Hazard Litig.*,
  No. C-11-3058 JCS, 2013 WL 3829271 (N.D. Cal. July 23, 2013) ..............................9, 10, 12

*Krohm v. Epic Games, Inc.*,
   No. 1-19-cv-2353 (N.D. Ill.) ................................................................................................4

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ...........................................................................................................10

*Lindley v. Life Investors Ins. Co. of Am.*,
   No. 08-CV-379-CVE-PJC, 2009 WL 3296498 (N.D. Okla. Oct. 9, 2009) ....................6, 10

*Nottingham Partners v. Tranx-Lux Corp.*,
   925 F.2d 29 (1st Cir. 1991) ...................................................................................................6

*Nwabueze v. AT&T Inc.*,
   No. CV 09-1529 SI, 2013 WL 12173891 (N.D. Cal. Jan. 17, 2013) .....................................7

*Olson v. Sprint Spectrum L.P.*,
   No. C06-592-JCC, 2008 WL 11506695 (W.D. Wash. Apr. 16, 2008) ..................................6

*Orion Prop. Grp., LLC v. Hjelle*,
   No. 19-cv-44 (JS) (GRB), 2020 WL 224573 (E.D.N.Y. Jan. 15, 2020) ...............................10

*Perkins v. LinkedIn Corp.*,
   No. 13-CV-4303-LHK, 2015 WL 13357952 (N.D. Cal. Sept. 15, 2015) ..............................7

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) .............................................................................................13

*Proctor v. Vishay Intertechnology Inc.*,
   584 F.3d 1208 (9th Cir. 2009) ...........................................................................................8, 9

*R.A. v. Epic Games, Inc.*,
   No. 2:19-cv-1488-GW-E (C.D. Cal. 2019) ....................................................................4, 12

*R.A. v. Epic Games, Inc.*,
   No. 5:19-cv-325-BO, 2020 WL 865420 (E.D.N.C. Feb. 20, 2020) ....................................12

*In re RC2 Toy Lead Paint Prods. Liab. Litig.*,
   No. 7 C 7184, 2008 WL 548772 (N.D. Ill. Feb. 20, 2008) ...................................................9

*Roman v. Acclaim Mobility, LLC*,
   No. 20-cv-487-VC, 2020 WL 3574666 (N.D. Cal. July 1, 2020) .......................................11

*Sandpiper Village Condo. Ass'n, Inc. v. Louisiana-Pacific Corp.*,
   428 F.3d 831 (9th Cir. 2005) ................................................................................................7

*Scollan v. Gov't Employees Ins. Co.*,
   222 Cal. App. 2d 181 (1963) ..............................................................................................12

*In re Sony PS3 "Other OS" Litig.*,
   No. 10-cv-1811-YGR, 2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) .................................7

*White v. Epic Games, Inc.*,
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) ...............................................................................3, 12

*White v. Epic Games, Inc.*,
    No. 4:19-cv-3629-YGR (N.D. Cal.)...................................................................................3, 4, 12

*Zanca v. Epic Games, Inc.*,
    No. 21-CVS-534 (N.C. Super. Ct., Wake County) ........................................................ *passim*

**STATUTES, RULES & REGULATIONS**

Cal. Family Code § 6710 ..................................................................................................................12

Fed. R. Civ. P. 23 ................................................................................................................................3

Fed. R. Civ. P. 68 ..............................................................................................................................13

**OTHER AUTHORITIES**

Makena Kelley and Nick Statt, "Epic Games Will Settle Fortnite Loot Box
    Lawsuits In V-Bucks," *TheVerge.com* (Feb. 22, 2021) (available at
    https://www.theverge.com/2021/2/22/22295676/epic-games-fortnite-loot-box-
    lawsuit-settlement-rocket-league-v-bucks) ..............................................................................5

**INTRODUCTION**

When a nationwide class action settlement is proposed in one court, it is entirely routine for that court to enjoin prosecution of parallel litigation during the Fairness Hearing process in order to preserve its ability to enter effective final relief. It is equally commonplace for other courts to stay parallel litigation in deference to the settlement proceedings. The purpose of such injunctions and stays is to further the goals of resolving class actions fairly and requiring those with objections to a settlement to present them to the court considering it.

The court in *Zanca v. Epic Games, Inc.*, No. 21-CVS-534 (N.C. Super. Ct., Wake County)—a jurisdiction, notably, where all players of *Fortnite* consented to litigate non-arbitrable claims arising from their game play and purchases—issued such a routine injunction, as courts in this District also do as a matter of course when entering preliminary approval orders. Plaintiffs' opposition to Epic Games' stay motion ("Opp. Br.," Dkt. No. 21) does not cite a single case in which one court refused to stay parallel litigation while another court considers a settlement that would resolve the claims at issue. Plaintiffs' brief relies instead on anti-injunction and anti-abstention principles that simply do not apply where class action settlements are involved.

The instant case offers no occasion to deviate from the normal practice of staying litigation in deference to settlement proceedings. It is, in fact, exactly the kind of case that should be stayed. Plaintiffs K.W. and Jillian Williams did not even file this case until *after* the *Zanca* settlement already had been executed and proposed to the *Zanca* court. Its purpose is to collaterally attack the settlement in a different court, which is wholly improper. Plaintiffs, moreover, are represented by (1) the former partners of one of the attorneys acting for the *Zanca* settlement class, with whom they are embroiled in a fee dispute—this case seems to be part of a plan by them to gain leverage in that dispute—and (2) two principals of a Florida-based litigation funding firm that may have invested in this case and/or the previous case that gave rise to fee dispute. These lawyers rushed to court so precipitously with this case that they did not adequately vet their clients. ***Neither K.W. nor Ms. Williams ever purchased anything from Epic Games***.

Ostensibly on behalf of the two Plaintiffs, whose standing to sue is doubtful, these attorneys baselessly attack the *Zanca* settlement, the parties who negotiated it, and, by extension, the retired

United States District Judge who mediated those discussions. These attacks are easily answered, but this Court is not the appropriate venue to discuss the *Zanca* settlement's fairness. If it is Plaintiffs' desire to pursue whatever personal claims they may have against Epic Games, they may opt out of the *Zanca* settlement. The reality, however, is that if Plaintiffs ever had any such claims, they are moot now because Epic Games accepted K.W.'s "disaffirmation" of his alleged (but nonexistent) transactions with Epic Games and refunded all monies spent in K.W.'s *Fortnite* account, regardless of whether it was K.W. or someone else who spent those monies, and regardless of whether those transactions were with Epic Games or third parties.

Epic Games' provision of a full refund to Plaintiffs was not a "pick-off" of putative class representatives through an "unaccepted" settlement offer, for three reasons. First, K.W.'s lawsuit claiming disaffirmation was itself an offer that Epic Games accepted by honoring K.W.'s disaffirmation. Second, the *Zanca* settlement would resolve claims by all other minors seeking to disaffirm *Fortnite* in-game purchases, so there is no "class" for Plaintiffs to represent. Plaintiffs can opt themselves out of the *Zanca* settlement if they wish (although they have no further claims to pursue), but they have no right to opt out others or to attack the settlement collaterally in a different court. Third, a year ago, Epic Games changed its practices and now requires those who enter payment information into Epic Games' systems to buy something within *Fortnite* to affirm that they are ***adults*** and that they agree to the *Fortnite* End User License Agreement ("EULA"). Minors no longer can transact with Epic Games using their "own money." Between the *Zanca* settlement, which resolves backward-looking claims, these changed practices, which obviate any need for prospective relief, and the full refund Plaintiffs have received, there will be nothing left for this Court to adjudicate if the *Zanca* settlement receives final approval.

Contemporaneously with this Reply, Epic Games is filing a Motion to Dismiss for Lack of Standing Or, In the Alternative, To Compel Arbitration. That motion will set forth all the reasons why Plaintiffs cannot litigate their claims in this Court even without respect to the *Zanca* settlement. There should be no reason, however, for this Court to adjudicate the motion while dispositive settlement proceedings are underway in *Zanca*. The Court should treat this motion as the routine matter it is and enter the requested 70-day stay.

## RESPONSE TO "FACTS" PRESENTED IN PLAINTIFFS' OPPOSITION

Plaintiffs portray this case as "a continuation" of *White v. Epic Games, Inc.*, No. 4:19-cv-3629-YGR (N.D. Cal.), which ended by means of a voluntary dismissal on January 12, 2021, shortly after it became clear that the plaintiff in *White* would not be able to pursue class claims. The cases have no relationship, except to the extent that attorneys formerly involved in *White* are involved in a fee dispute with their former partner, Deepali Brahmbhatt, who was lead plaintiffs' counsel in *White*. Ms. Brahmbhatt left OneLLP, the firm that filed *White*, in November 2020, but remained lead counsel in *White*. OneLLP withdrew from the *White* case on November 2, 2020. *See White* Dkt. No. 89, Opp. Br. at 3.

Plaintiffs' stay brief feigns puzzlement as to why the *White* case ended in dismissal, but the explanation is perfectly clear from the public docket, including papers filed while OneLLP was still representing the *White* plaintiffs. The plaintiffs in *White* had significant Rule 23 problems from the outset, and those problems became acute shortly before dismissal of that case—so much so that Epic Games had grounds to seek reconsideration of whether the case belonged in court at all. The case survived a motion to compel arbitration, while other cases filed against Epic Games had not, because the minor plaintiff in *White* defended his disaffirmation of the *Fortnite* EULA by assuring the Court that he had "no intention of playing Fortnite in the future." *[White] v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1037 (N.D. Cal. 2020). This proved not to be true. The *White* plaintiff resumed playing *Fortnite*, reaccepted the *Fortnite* EULA, and made additional in-game purchases that once again subjected him to the EULA's dispute resolution provisions, including the arbitration requirement. On December 11, 2020, Plaintiffs' counsel in *White* filed an extraordinary "Notice Regarding Plaintiff C.W.'s Activity" (*White* Dkt. No. 92), in which they admitted that "Minor Plaintiff C.W. may not be the best available candidate to represent the class." They filed a motion seeking to have two new plaintiffs "intervene" in the case (*see White* Dkt. No. 93), but as Epic Games noted in response to that attempt, the new plaintiffs would have been subject to brand-new motions to compel arbitration of their own claims. *See* White Dkt. No. 94 at 4.

With the *White* case in disarray, Ms. Brahmbhatt, along with the proposed new plaintiffs in *White*, joined negotiations to resolve claims respecting minor disaffirmation, along with other

claims that had been alleged against Epic Games in other matters, on a class basis. Ms. Brahmbhatt and those plaintiffs signed the *Zanca* settlement agreement in early January 2021, and the two plaintiffs who had been proposed intervenor-plaintiffs in *White* are two of the class representatives in *Zanca*. *See* Exs. A & B to the Declaration of Samuel J. Salario (Dkt Nos. 21-2, 21-3).[1]

It is impossible to ignore the likelihood that this case is nothing more than an attempt to gain leverage in the fee dispute among Ms. Brahmbhatt, her former partners at OneLLP, and litigation funders. Mr. Salario and his co-counsel, Maximillian Amster, are, respectively, the Managing Director of Investments and Chief Executive Officer of Veridis Management LLC, a litigation funding firm in Florida. *See* https://www.veridismgmt.com/about (last visited Mar. 13, 2021). Their presence highlights that this case is an attempt to advance their position in an intra-counsel dispute over money.

On January 6, 2021—the eve of the *Zanca* settlement's execution after weeks of negotiation—OneLLP served an "Attorneys' Lien against any settlement proceeds, fees awarded, or Judgment which arises from or relates to [*White*]." *See* Jacobson Decl. ¶ 8. According to Mr. Salario's declaration (at ¶ 4), his firm and OneLLP "learn[ed] of" the *Zanca* complaint and began monitoring the *Zanca* docket. Mr. Salario currently denies having known about the *Zanca* settlement motion, presented to the *Zanca* court on January 25, when he and OneLLP filed this *K.W.* case on February 8. That denial, however, is at odds with what Mr. Salario stated in an earlier telephone conversation. *See* Salario Decl. Ex. H (Dkt. No. 21-9); Jacobson Decl. ¶ 11.

Messrs. Salario and Amster, and Ms. Brahmbhatt's former partners at OneLLP, have made no secret of their desire to "blow up" the *Zanca* settlement that Ms. Brahmbhatt and other skilled plaintiffs' counsel negotiated with Epic Games. The first half of their brief wildly mischaracterizes the *Zanca* settlement. These arguments, however, belong in an objection filed with the *Zanca* court, not a collateral attack in this Court.

---

[1] Plaintiffs falsely contend that *Krohm v. Epic Games, Inc.*, a putative class action that had been pending appeal to the Fourth Circuit—the counsel for which also are involved in the *Zanca* settlement—and *R.A. v. Epic Games, Inc.*, a case discussed further below, were filed "[w]hile [*White*] was pending. That is not true. *Krohm* was filed on February 15, 2019. *See Krohm v. Epic Games, Inc.*, No. 1-19-cv-2353 (N.D. Ill.), Dkt. No. 1-1. *R.A.* was filed on February 28, 2019. *See R.A. v. Epic Games, Inc.*, No. 2:19-cv-1488-GW-E (C.D. Cal.), Dkt. No. 1. The plaintiffs in *White* did not file that case until June 21, 2019. *See White* Dkt. No. 1.

In discussing the *Zanca* settlement, Plaintiffs omitted mention that it was mediated by the Honorable Wayne Andersen (Ret.), former United States District Judge in Chicago, and now a highly experienced neutral for JAMS. They also fail to tell the Court of the settlement's most important benefits to class members, including the **automatic** deposit of 1,000 units of *Fortnite* virtual currency ("V-Bucks") into the accounts of 6.5 million *Fortnite* players, without need of a claims process. *See* Salario Decl. Ex. A § 2.1. A player who wished to purchase those 1,000 V-Bucks would have had to pay $7.99 for them at current prices. *See id.* § 2.1(c). The settlement also provides the opportunity for *Fortnite* players who made in-game purchases to claim up to $26.5 million in cash or (at their option) virtual currency benefits. Plaintiffs complain that these benefits are capped at $50 per claimant. *See id.* §§ 2.2-2.5; Opp. Br. at 6. They did not note, however, that —as the *Zanca* parties told the *Zanca* court—the overwhelming majority of *Fortnite* players who engaged in-game transactions spent less than this. *See* Salario Decl. Ex. G at 9:23.

Nor is it true that "[c]lass members are required to justify their claim with extensive documentation." Opp. Br. at 6. In fact, if they purchased in-game items from Epic Games, they need not provide any documentation at all because Epic Games can verify the transactions based on the claimant's account information alone. If claimants purchased items from third parties (*i.e.*, the Apple Store, before Apple discontinued selling these items), they must provide proof of purchase from the third-party source, but because these all were electronic purchases, such proof should be readily obtainable. *See* Salario Decl. Ex. A § 2.2(c). Further, Epic Games has no say in the decision whether or not to award benefits to a claimant or the amount of the award. That discretion rests entirely in the hands of the Settlement Administrator in consultation with counsel for the Settlement Class. *See id.* § 2.5(e).

Every one of Plaintiffs' complaints about the *Zanca* settlement lacks merit. The parties settled where Epic Games is headquartered, in the venue specified in the *Fortnite* EULA, where all *Fortnite* players consent to jurisdiction, so their complaint about the chosen venue for the settlement is wrong. Plaintiffs' assertion that the preliminary approval hearing was conducted out of public view is equally wrong. The hearing notice had been on the North Carolina court's public calendar, published on the internet, for weeks. Members of the press attended the preliminary approval

1  hearing and reported on it.[2]  Direct notice of the settlement has since been sent by email to over 27

2  million class members, and the settlement has been widely covered in the media.

3        Plaintiffs' other allegations about the settlement are wrong, too.  The *Zanca* plaintiffs have

4  served confirmatory discovery.  Epic Games will respond to it well in advance of the *Zanca* Fairness

5  Hearing. There also is no "clear sailing" provision in the Settlement Agreement with respect to the

6  *Zanca* plaintiffs' counsel's expected fee request.  *See* Salario Decl. Ex. A § 6.2.  The Settlement

7  Agreement is fair.  If these are Plaintiffs' primary objections to it, that objection should fail.

## ARGUMENT

### I. Plaintiffs' Meritless Attacks On the *Zanca* Settlement Should Be Presented To the *Zanca* Court As an Objection, Not To This Court As a Collateral Attack.

      Plaintiffs' potential objections to the *Zanca* settlement "are matters for the [North Carolina] courts to decide." *Lindley v. Life Investors Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2009 WL 3296498, at *3 (N.D. Okla. Oct. 9, 2009) (staying Oklahoma federal case in deference to class action settlement proceedings pending in Arkansas state court).  The Ninth Circuit does not countenance collateral attacks on class action settlements.  "Absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal within the state system and by direct review in the United States Supreme Court." *Epstein v. MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999).  In *Epstein*, the Ninth Circuit gave "full faith and credit" to a Delaware state court settlement.  Citing *Nottingham Partners v. Tranx-Lux Corp.*, 925 F.2d 29, 33 (1st Cir. 1991), *Epstein* endorsed the conclusion that "objections to the determinations of a certifying [state] court had to be remedied on appeal to the state supreme court . . . , and not by recourse to the federal courts in the vain pursuit of back-door relief." *Epstein*, 179 F.3d at 648.  The court in *Olson v. Sprint Spectrum L.P.*, No. C06-592-JCC, 2008 WL 11506695, at *2 (W.D. Wash. Apr. 16, 2008), similarly noted that full faith and credit would be meaningless if state court settlements can be attacked collaterally in federal court.

---

[2] *See, e.g.*, Makena Kelley and Nick Statt, "Epic Games Will Settle Fortnite Loot Box Lawsuits In V-Bucks," *TheVerge.com* (Feb. 22, 2021) (available at https://www.theverge.com/2021/2/22/22295676/epic-games-fortnite-loot-box-lawsuit-settlement-rocket-league-v-bucks).

Plaintiffs are trying to use this *later-filed* case as a vehicle to attack the *Zanca* settlement. This Court should not countenance that attempt. If Plaintiffs object to the *Zanca* settlement, they should bring those objections to the *Zanca* court. If they wish to pursue separate litigation, they may opt out of the *Zanca* settlement. Their collateral attack on the settlement here is improper.

## II.     Injunctions of Parallel Litigation During the Fairness Process, and Stays of Parallel Litigation In Deference To It, Are Routine In Class Action Practice.

### A.     The North Carolina Court Correctly Enjoined Parallel Litigation.

It is routine, and a recognized exception to anti-injunction principles, for a court presiding over a proposed class action settlement to enjoin putative class members from litigating to-be-released claims elsewhere during the fairness process. Courts in this District include injunction provisions in preliminary approval orders as a matter of course. *See, e.g.*, *In re Sony PS3 "Other OS" Litig.*, No. 10-cv-1811-YGR, 2017 WL 5598726, at *6 (N.D. Cal. Nov. 21, 2017) ("Pending the final determination of whether the Settlement should be approved," enjoining putative class members from prosecuting any putative Released Claims "in any . . . forum."); *Castillo v. Seagate Tech. LLC*, No. 3:16-cv-1958-RS, 2017 WL 4798611, at *5 (N.D. Cal. Oct. 19, 2017) (entering same injunction "[t]o protect its jurisdiction to consider the fairness of the Settlement Agreement and to enter a final order and judgment having binding effect on all Settlement Class Members"); *Perkins v. LinkedIn Corp.*, No. 13-CV-4303-LHK, 2015 WL 13357952, at *4 (N.D. Cal. Sept. 15, 2015) (same); *Nwabueze v. AT&T Inc.*, No. CV 09-1529 SI, 2013 WL 12173891, at *6 (N.D. Cal. Jan. 17, 2013) (same, "to protect . . . the Court's flexibility and authority to effectuate the Proposed Settlement and to enter final judgment when appropriate"). The Ninth Circuit authorized such orders in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), and confirmed the justification for them in *Sandpiper Village Condo. Ass'n, Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 845-46 (9th Cir. 2005). As these courts have made clear, the purpose of these injunctions is to require class members to present any objections to the settlement in the court considering it, not to mount collateral attacks in separate proceedings. Plaintiffs do not cite any cases in which courts declined to honor injunctions in this circumstance, and the cases they do cite prove why such injunctions are appropriate in the class action context.

*Donovan v. City of Dallas*, 377 U.S. 408 (1964), upon which Plaintiffs place nearly the entire weight of their opposition, *did not involve a proposed class action settlement*. The state court in *Donovan* attempted to enjoin federal *non-class* litigation challenging the issuance of municipal bonds to build an airport runway. *See id.* at 408-09. In stating the "general rule . . . that state and federal courts would not interfere with or try to restrain each other's proceedings," *Donovan* noted an "exception" for "proceedings in rem or quasi in rem." *Id.* at 412. It has long been recognized that because the success of any class action settlement is "dependent on the parties' ability to agree to the release of any and all related civil claims," the jurisdiction of a court considering a class action settlement "is analogous to that of a court in an in rem action, . . . where it is intolerable to have conflicting orders from different courts." *In re Baldwin-United*, 770 F.2d 328, 337 (2d Cir. 1985) (internal quotation and citation omitted). The *Baldwin-United* court considered an "injunction protecting the settling defendants" from parallel litigation during the settlement process to be "unquestionably" justified. *Id.* at 338.

*Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208 (9th Cir. 2009), which Plaintiffs also cite, similarly did not involve an injunction during the Fairness Hearing process and says nothing about the propriety of such injunctions. In *Proctor*, a defendant settled class action securities litigation in Delaware state court. *Id.* at 1215. While that settlement was going through the approval process, separate litigation in California was "stalled for over two years" and did not come into play during the Delaware settlement proceedings. *Id.* at 1214. When that separate litigation resumed, rather than submitting to the California court the question of whether the settlement release applied to and barred the California claims, the settling defendant obtained an injunction from the Delaware court—again, *after* the Delaware settlement already had received *final* approval—enjoining the California litigation. The California judge stated that he found it "extraordinary for a court in one state to tell the parties in litigation in this state how the court ought to rule on the issue of whether or not the [approved] settlement in that other state affects this litigation," but honored the injunction. *Id.* at 1217. The Ninth Circuit held that injunction to be improper because the "in rem" exception no longer applied to an already-approved settlement. *See id.* at 1229. "The Delaware settlement may have a preclusive effect on the plaintiffs' federal

1  action[,] [b]ut the Delaware court cannot enforce that preclusive effect via an injunction that
2  reaches out to constrain the workings of the federal court." *Id.*

3  That is not the situation presented here. The *Zanca* court's injunction explicitly applies
4  only during its consideration of the fairness of the *Zanca* settlement. The Fairness Hearing will
5  occur in less than two months. It happens that, should the *Zanca* court approve the settlement,
6  Plaintiffs here have no possible argument that the settlement's release provisions do not apply to
7  and bar their claims. For that reason, they must opt out of the *Zanca* settlement or prevail in an
8  objection to it if they want to preserve their claims. They must do so, however, by following the
9  procedures set out by the *Zanca* court. They cannot attack the settlement collaterally in this Court.

### B. This Court Should Stay Plaintiffs' Case With Or Without Regard to the Zanca Court's Injunction Order.

12  Just as Plaintiffs do not cite any cases holding that injunctions of parallel litigation during
13  the Fairness Hearing process are improper, they do not cite any cases refusing to stay parallel
14  litigation while another court considers a class action settlement. They also barely addressed the
15  cases Epic Games cited that granted stays in these circumstances. *See* Opening Br. at 7-8. Those
16  cases were hardly outliers; judges presiding over parallel cases grant stays as a matter of course
17  once class action settlements receive preliminary approval in other courts. As Magistrate Judge
18  Spero noted in *In re JP Morgan Chase LPI Hazard Litig.*, No. C-11-3058 JCS, 2013 WL 3829271,
19  at *2 (N.D. Cal. July 23, 2013), "it is the practice of the federal courts to stay pending proceedings
20  when a class action settlement is pending approval in another court." *See also, e.g.*, *In re RC2 Toy*
21  *Lead Paint Prods. Liab. Litig.*, No. 7 C 7184, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008)
22  (staying federal court action pending final approval of state settlement because the latter would
23  "have a substantial effect on some or all of Plaintiffs' claims before [the District] Court.").

24  As was the case in *JP Morgan*, "the parties do not dispute that a settlement of the class
25  claims in [*Zanca*] would resolve the class claims in this case." 2013 WL 3829271, at *4. The
26  plaintiffs in *JP Morgan*, like Plaintiffs here, attacked the proposed settlement, but do not explain
27  why they cannot present those objections to the settlement court or "tie [their possible objections]
28  to the grant or denial of a stay." *Id.* To the contrary, a stay "will free Plaintiffs to focus their

1  attention on contesting the validity of [the] settlement agreement." *Id.*  A stay also clearly "is in
2  the interest of judicial economy because a settlement in [*Zanca*] will obviate any further litigation
3  of issues in this case." *Id.* at *5.  *See also, e.g.*, *Orion Prop. Grp., LLC v. Hjelle*, No. 19-cv-44 (JS)
4  (GRB), 2020 WL 224573, at *5 (E.D.N.Y. Jan. 15, 2020) (staying New York federal case in
5  deference to settlement proposed in Illinois state court, even though the federal case was earlier-
6  filed, because the settlement would resolve the claims pleaded in federal court); *Lindley*, 2009 WL
7  3296498, at *3 (staying Oklahoma federal case pending settlement fairness hearing in parallel
8  Arkansas state matter because state settlement would have a significant impact on the District
9  Court's decision to certify the class).[3]

10  In weighing the propriety of a stay, Judge Spero applied the test set forth in *Landis v. North*
11  *American Co.*, 299 U.S. 248 (1936), which held that "[a] district court has discretionary power to
12  stay proceedings in its own court." *JP Morgan*, 2013 WL 3829271, at *3, *citing Landis*, 299 U.S.
13  at 254.  Plaintiffs contend that stays in deference to state court class action settlement proceedings
14  should be governed instead by the presumption against abstention set forth in *Colorado River Water*
15  *Conservation District v. United States*, 424 U.S. 800 (1976).  As the *Lindley* court explained,
16  however, "a limited stay of . . . class claims is not the equivalent of declining jurisdiction or
17  abstaining, and *Colorado River* . . . is not applicable." *Lindley*, 2009 WL 3296498, at *3. *Landis*
18  governs because a stay "conserve[s] defendant's resources . . . [and] the Court's resources." *Id.*

19  Even if *Colorado River* were relevant, moreover, it does not preclude limited stays while a
20  state court considers the fairness of a nationwide settlement.  In *Brown v. Abercrombie & Fitch*
21  *Co.*, No. CV 14-1242 JGB (VBKx), 2015 WL 12778338, at *1 (C.D. Cal. June 24, 2015), as here,
22  a defendant sought a stay of federal class action proceedings in deference to a parallel class action
23  settlement proposed in California Superior Court.  The *Brown* court considered whether *Colorado*
24  *River* abstention might impact its discretion to issue a stay.  *See id.* at *3.  Because the proposed
25  settlement would resolve the claims of "all putative class members in [the federal] case," the *Brown*
26  court granted the stay.  *See id.* at *3-*6, *quoting Holder v. Holder*, 305 F.3d 854, 868 (9th Cir.

---

[3] The court in *Lindley*, 2009 WL 3296498, at *2, listed six other cases in which federal courts stayed those cases in deference to class action settlement proceedings in state court.

2002) (stays appropriate where "the federal court will have nothing further to do in resolving any substantive part of the case" once the state court completes its work).

Because stays are routine in class action cases, and because Plaintiffs therefore cannot cite any relevant precedent denying a stay in similar circumstances, Plaintiffs' opposition to a stay relies solely on two cases that did not involve proposed class action settlements. In *Harris v. Pernsley*, 755 F.2d 338, 342-43 (3d Cir. 1985) (*see* Opp. Br. at 10), the Third Circuit determined the extent to which federal litigants were subject to a claim preclusion argument based on a state court's dismissal order. No class action settlement was under consideration. Notably, the Third Circuit has joined the chorus authorizing injunctions of parallel litigation while a court considers a class action settlement. *See In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002). The other case Plaintiffs cite, *Roman v. Acclaim Mobility, LLC*, No. 20-cv-487-VC, 2020 WL 3574666 (N.D. Cal. July 1, 2020), also did not involve a proposed class action settlement. The plaintiffs in *Roman* were pursuing individual claims simultaneously in a state and federal case. Judge Chhabria noted the possibility that the plaintiffs were "abusing the legal process" in a manner that might justify a stay, but the defendant's motion "d[id] not make that clear." *Id.* at *1.

Regardless of which balancing test applies, Plaintiffs do not explain how they would be prejudiced in any manner by a 70-day stay. The Fairness Hearing in *Zanca* is set for May 6, 2021, less than two months from now. Epic Games filed a Motion to Dismiss or to Compel Arbitration today and has no objection to that motion being stayed along with the rest of the case. Continuing to waste the parties' and the Court's resources on motion practice, when the *Zanca* settlement indisputably would moot this case, makes no sense.

Plaintiffs hypothesize that if the *Zanca* court approves the settlement, an objector might appeal. *See* Opp. Br. at 17. That, however, is the proverbial bridge that the parties and this Court can cross if and when they come to it. For now, Epic Games seeks a stay only 10 days after the Fairness Hearing, when the parties can report further. Plaintiffs, moreover, can simply opt out of the *Zanca* settlement and thereby preserve their individual claims (if any), in which case they may resume pursuit of their claim as soon as the *Zanca* court recognizes that option. Epic Games would not object to having their opt-out take immediate effect.

## II. Plaintiffs Are In No Position To Challenge The *Zanca* Settlement, Or To Litigate In This Court, Because Their Claims Are Moot.

Even if some theoretical plaintiff might be able to articulate a reason not to stay a parallel case pending the outcome of a class action settlement hearing, the facts of this case warrant no such deviation from what Magistrate Judge Spero correctly referred to in *JP Morgan* as standard practice. This is a *later-filed* case put forward by attorneys hoping to derail the *Zanca* settlement and gain leverage in a fee dispute. Plaintiffs' standing to sue is in question because they never transacted with Epic Games, as explained in Epic Games' opening brief and explained further in Epic Games' newly filed dismissal motion. *See* Jacobson Decl. ¶ 17. Then, if Plaintiffs ever had standing, Epic Games mooted their claims by honoring K.W.'s disaffirmation immediately after he asserted it, even though K.W. never purchased anything from Epic Games with his "own money."

Because of the *Zanca* settlement and certain changes to its sales practices that Epic Games adopted a year ago, Epic Games handled K.W.'s disaffirmation attempt differently than it handled the attempt made by the minor plaintiff in *White* in 2019. In *White*, Epic Games "indicated its unwillingness to honor plaintiff's disaffirmance and refund the in-App purchases." *White*, 435 F. Supp. 3d at 1044. That was not the case here.

Unlike the *White* plaintiff, K.W. never provided Epic Games with pre-suit notice of his claim. His first invocation of his right to disaffirm came in his February 8 complaint, and he did not provide his full name to Epic Games until February 17. Within 24 hours of his having done so, Epic Games accepted his disaffirmation and provided a full refund for all purchases made in K.W.'s account, regardless of who made those purchases and regardless of whether Epic Games had been a party to those transactions. *See id.* ¶¶ 15-16, 18. Disaffirmation of a contract renders it a nullity. *See I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012), *citing Scollan v. Gov't Employees Ins. Co.*, 222 Cal. App. 2d 181, 183-84 (1963).

As in *R.A. v. Epic Games, Inc.*, No. 5:19-cv-325-BO, 2020 WL 865420 (E.D.N.C. Feb. 20, 2020), Epic Games accepted K.W.'s disaffirmation as soon as he identified himself and invoked California Family Code § 6710. The *R.A.* court held that acceptance to moot the plaintiff's claims. *See id.* at *2 ("Plaintiff cannot void the transactions with defendant and receive his refund while

1  simultaneously maintaining causes of action that arise solely from those transactions."). Plaintiffs
2  falsely contend that Epic Games' refund to K.W. "ha[s] not actually been received." Opp. Br. at
3  19, *citing Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1146 (9th Cir. 2016).  In fact, Epic Games sent
4  a check by overnight mail on February 18, and Plaintiffs acknowledged receipt of that check. *See*
5  Jacobson Decl. ¶ 20.  A refund is all K.W. can receive.  *See I.B.*, 905 F. Supp. 2d at 1001 ("Upon
6  disaffirmance the minor is entitled to recover all benefits paid under the contract"); *Gillis v.*
7  *Whitley's Disc. Auto Sales, Inc.*, 70 N.C. App. 270, 280 (1984) ("A minor is not entitled to a
8  windfall.  He is merely to be made whole.") (internal citation omitted).
9     Epic Games does not dispute that a class action defendant cannot moot class claims by
10 making a Rule 68 offer of judgment for the full amount of a named plaintiff's claims.  *See Pitts v.*
11 *Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011).  That, however, is not this case.  Plaintiffs'
12 Complaint hypothesized that Epic Games would not accept K.W.'s disaffirmation and sought a
13 declaratory judgment requiring Epic Games to do so, but Epic Games proved Plaintiffs wrong by
14 immediately honoring K.W.'s disaffirmation without questioning the legal basis of his attempt.
15 Nor is minor disaffirmation an issue that is "capable of repetition yet evading review."  Epic Games
16 has ceased allowing minors to enter payment information in connection with purchases, as the
17 *Zanca* settlement agreement recognizes (*see* Salario Decl. Ex. A § 2.7), and the *Zanca* settlement
18 allows any minor who made a *Fortnite* in-game purchase from Epic Games or a third-party
19 marketplace to disaffirm their transactions (*see id.* § 2.3).
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## CONCLUSION

The deadline for members of the *Zanca* settlement class to opt out of or object to the settlement is April 12, 2021. Plaintiffs here have stated no meritorious basis to object to the *Zanca* settlement, but if they wish to mount an objection, they should address it to the *Zanca* court. Plaintiffs' collateral attacks on the settlement have no place in this Court. Stays in deference to proposed class action settlements in other courts are so routine that Plaintiffs could not cite a single example of such a stay being denied. This Court should follow that normal practice and stay this matter until the outcome of the *Zanca* settlement approval proceedings. As noted in Epic Games' opening brief, Epic Games proposes that the parties file a joint status report within 10 days of the *Zanca* Final Approval Hearing to advise this Court whether that settlement was approved.

Dated: March 15, 2021

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (*pro hac vice*)
    Matthew J. Adler

Attorneys for Defendant
EPIC GAMES, INC.