MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone:     415-591-7500
Facsimile:     415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036-2714
Telephone:     212-248-3140
Facsimile:     212-248-3141

Attorneys for Defendant
EPIC GAMES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| K.W., a minor and through K.W.'s guardian, Jillian Williams, and JILLIAN WILLIAMS, individually, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>EPIC GAMES, INC.,<br><br>          Defendant. | Case No. 3:21-cv-00976-CRB<br><br>**DEFENDANT EPIC GAMES, INC.'S NOTICE OF MOTION AND MOTION TO (1) DISMISS FOR LACK OF STANDING PURSUANT TO F.R.C.P. 12(B)(1) OR, IN THE ALTERNATIVE, (2) COMPEL INDIVIDUAL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:     April 23, 2021<br>Time:    10:00 a.m.<br>Ctrm:   6 – 17th Floor<br>Judge:   Hon. Charles R. Breyer<br><br>Action Filed:  February 8, 2021<br>Trial Date:   None set |

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

CASE NO. 3:21-cv-00976-CRB

## <u>NOTICE OF MOTION AND MOTION – SUMMARY OF ARGUMENT</u>

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 23, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor of the above Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Epic Games, Inc. ("Epic Games") will and hereby does move for an order: (1) dismissing Plaintiffs' claims for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1); or, in the alternative, (2) compelling arbitration of Plaintiffs' claims.

**Motion to Dismiss For Lack of Standing.**  Plaintiff K.W. claims to have established an account with Epic Games to play *Fortnite*, a highly popular video game published by Epic Games. Contrary to the allegations in Plaintiffs' Complaint, neither K.W. nor his mother, Plaintiff Jillian Williams, ever had any transactions with Epic Games.  Within Plaintiffs' *Fortnite* player account, two purchases were made from Epic Games, one on March 29, 2020 (for $9.99), and one on July 19, 2020 (for $9.89).  The method of payment used for these transactions belonged to a third party, not to K.W. or Jillian Williams.  Plaintiffs, therefore, do not have standing to sue regarding these transactions.  Further, notwithstanding these facts, Epic Games immediately honored Plaintiffs' request to "disaffirm" these transactions and refunded all monies spent within K.W.'s account.  This action by Epic Games mooted Plaintiffs' claims, and they should be dismissed under Rule 12(b)(1).

**Motion to Compel Arbitration.**   All persons who open a *Fortnite* account must affirmatively agree to the *Fortnite* End User License Agreement ("EULA").  The EULA's first page advises all persons seeking to open a *Fortnite* account that (1) "[t]his agreement contains a binding, individual arbitration and class-action waiver provision," and (2) "[t]o enter into this license agreement, you must be an adult of the legal age of majority," and that "[i]f you are under the legal age of majority, your parent or legal guardian must consent to this agreement."  By creating a *Fortnite* account, either minor Plaintiff K.W. misrepresented his age to Epic Games, or else Plaintiff Jillian Williams, K.W.'s mother, agreed to the EULA on K.W.'s behalf.  Purchases, moreover, must be made by *adults* who must agree to the EULA when they enter payment information.  Plaintiffs, therefore, must arbitrate their claims as required by the EULA.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION                - 2 -                CASE NO. 3:21-CV-00976-CRB

1    These Motions are based on this Notice of Motion and Motion, the Memorandum of Points

2  and Authorities in support, the Declarations of Jeffrey S. Jacobson and John Farnsworth, and

3  exhibits thereto, as well as all papers and pleadings on file herein, and such argument as properly

4  may be presented at a hearing.

5   Dated:  March 15, 2021                    FAEGRE DRINKER BIDDLE & REATH LLP

6

7

8                                By: /s/ Jeffrey S. Jacobson
                                     Jeffrey S. Jacobson (*pro hac vice*)
9                                    Matthew J. Adler

10                               Attorneys for Defendant
                                 EPIC GAMES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION          - 3 -          CASE NO. 3:21-CV-00976-CRB

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 3

ARGUMENT ........................................................................................................................ 9

I.  The Court Should Dismiss This Action for Lack of Subject-Matter
Jurisdiction. ............................................................................................................. 9

    A.  Epic Games' Acceptance of K.W.'s Disaffirmation Renders the
Case Moot. ................................................................................................... 9

    B.  Plaintiffs Made No Purchases from Epic Games and Therefore
Lack Standing. ............................................................................................ 12

II. Alternatively, the Court Should Compel Arbitration. ........................................... 13

    A.  K.W.'s Account's Acceptance of the EULA is Binding. ........................... 13

    B.  This Dispute Falls Squarely Within the Scope of the Agreement. ........... 17

CONCLUSION .................................................................................................................. 18

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

- i -

CASE NO. 3:21-cv-00976-CRB

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4
*Am Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ...................................................................................................13

5

*AT&T Mobility LLC v. Concepcion*,
6        563 U.S. 333 (2010) ..................................................................................................13, 14

7
*Bishop Paiute Tribe v. Inyo Cty.*,
863 F.3d 1144 (9th Cir. 2017)...........................................................................................9

8

*Burnand v. Irigoyen*,
9        30 Cal.2d 861 (1947) ......................................................................................................10

10
*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ......................................................................................................11

11

*City of Erie v. Pap's A.M.*,
12        529 U.S. 277 (2000) ..........................................................................................................9

13
*Daugherty v. Experian Info. Solutions, Inc.*,
847 F. Supp. 2d 1189 (N.D. Cal. 2012) ..........................................................................14

14

*Dean Witter Reynolds, Inc. v. Byrd*,
15        470 U.S. 213 (1985) ........................................................................................................14

16
*Deck v. Spartz, Inc.*,
No. 2:11-cv-1123-JAM-DAD, 2011 WL 7775067 (E.D. Cal. Sept. 27, 2011) .......................10

17

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
18        885 F. Supp. 2d 894 (S.D. Ill. 2012) ...............................................................................16

19
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2002) ........................................................................................................13

20

*Gillis v. Whitley's Disc. Auto Sales, Inc.*,
21        319 S.E.2d 661 (N.C. App. 1984) ...................................................................................10

22
*Graf v. Match.com, LLC*, No. CV 15-3911 PA,
2015 WL 4263957 (C.D. Cal. July 10, 2015) .................................................................16

23

*Hastings v. Dollarhide*,
24        24 Cal. 195 (1864) ..........................................................................................................10

25
*Heidbreder v. Epic Games, Inc.*,
438 F. Supp.3d 591 (E.D.N.C. 2020).....................................................................14, 15, 16

26

*I.B. ex rel. Fife v. Facebook, Inc.*,
27        905 F. Supp.2d 989 (N.D. Cal. 2012) .............................................................................10

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION          - ii -          CASE NO. 3:21-CV-00976-CRB

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014)............................................................................17

*Koller v. Harris*,
   312 F. Supp. 3d 814 (N.D. Cal. 2018) ..................................................................9

*Larsen v. Trader Joe's Co.*,
   No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012)..........................13

*In re Lithium Ion Batteries Antitrust Litig.*,
   13-MD-2420-YGR, 2015 WL 8293728 (N.D. Cal. Dec. 9, 2015) ...........................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................12

*MacGreal v. Taylor*,
   167 U.S. 688 (1897) ........................................................................................10

*Macias v. Excel Bldg. Servs., LLC*,
   767 F. Supp. 2d 1002 (N.D. Cal. 2011) ..............................................................14

*McKee v. Audible, Inc.*,
   No. CV 17-1941-GW (Ex), 2017 WL 4685039 (C.D. Cal. July 17, 2017) ...............14

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ....................................................................................13, 17

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014).........................................................................14

*R.A. v. Epic Games, Inc.*,
   No. 5:19-cv-325-BO, 2020 WL 865420 (E.D.N.C. Feb. 20, 2020)..............9, 10, 12

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
   545 F.3d 1220 (9th Cir. 2008).........................................................................12

*Scollan v. Gov't Employees Ins. Co.*,
   222 Cal. App.2d 181 (1963)............................................................................10

*Shearson/Am. Express, Inc. v. McMahon*,
   482 U.S. 220 (1987) ........................................................................................13

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ....................................................................................12

*T.K. v. Adobe Sys., Inc.*,
   No. 17-CV-4595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018)....................10

*Timothy Dupler v. Orbitz, LLC*,
   No. CV182303RGKGSJX, 2018 WL 6038309 (C.D. Cal. July 5, 2018)................14

*Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*,
   940 F.2d 513 (9th Cir. 1991)...........................................................................17

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S MOTIONS TO COMPEL
ARBITRATION AND TO DISMISS

- iii -

CASE NO. 3:21-cv-00976-CRB

*White v. Epic Games, Inc.*,
   435 F. Supp.3d 1024 (N.D. Cal. 2020) ...................................................................4, 10, 11, 16

*Zanca v. Epic Games, Inc.*,
   No. 21-CVS-534 (N.C. Super. Ct., Wake County) ...........................................................1, 2, 12

**STATUTES, RULES & REGULATIONS**

9 U.S.C. § 4 ...........................................................................................................................13, 14

28 U.S.C. § 1391 .........................................................................................................................16

Cal. Family Code § 6710 ...................................................................................................1, 2, 4, 11

Fed. R. Civ. P. 10(a) ........................................................................................................................4

Fed. R. Civ. P. 12(b)(1) ...............................................................................................................9, 13

Fed. R. Civ. P. 68 .........................................................................................................................11

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S MOTIONS TO COMPEL
ARBITRATION AND TO DISMISS

- iv -

CASE NO. 3:21-CV-00976-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This Court has before it a fully-briefed motion to stay this case while the court in *Zanca v. Epic Games, Inc.*, No. 21-CVS-534 (N.C. Super. Ct., Wake County), considers whether to grant final approval to a nationwide class action settlement that indisputably would moot this case. The Court should grant that motion. Separate from the *Zanca* settlement's potential to moot Plaintiffs' claims, however, they are moot already for different reasons. Plaintiff K.W., a minor, seeks a declaratory judgment that California Family Code § 6710 allows him to "disaffirm" transactions he claims to have made with his "own money" while playing *Fortnite*, a highly popular video game published by Epic Games. K.W. provided no pre-suit notice to Epic Games of his disaffirmation— or, indeed, of any dissatisfaction at all with his purchases. But as soon as K.W. provided Epic Games with his full name and *Fortnite* account information, Epic Games acknowledged K.W.'s disaffirmation and refunded all monies spent on in-game purchases in K.W.'s *Fortnite* account. The Court, therefore, can grant K.W. no more relief than Epic Games already has provided him. As another court held in an analogous circumstance when Epic Games honored a minor plaintiff's request to disaffirm purchases pursuant to the Family Code, Epic Games' provision of the requested refund nullified the transactions at issue and mooted the plaintiff's claims.

Plaintiffs also never had standing to sue in the first place. Although Plaintiffs' Complaint (at ¶¶ 44-45, 48-49) alleges that K.W. made some purchases from Epic Games using his "own money" and made other purchases using the credit of his mother and co-plaintiff Jillian Williams, assertedly without Ms. Williams' permission, these allegations are demonstrably false. Epic Games' records show two transactions with the company from K.W.'s *Fortnite* account, both of which used credit cards belonging to a non-party, not to Ms. Williams. K.W. had no "own money" transactions with Epic Games; indeed, neither he nor Ms. Williams had any transactions with Epic Games at all. This lack of standing provides a separate basis for dismissal, but regardless of who made the purchases in K.W.'s account, and regardless of the source of the funds for those transactions, Epic Games has provided Plaintiffs with a full refund. If they ever had standing, and they apparently did not, they possess standing no longer.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION        - 1 -        CASE NO. 3:21-cv-00976-CRB

The undisguised purpose of this case is to attack the *Zanca* settlement collaterally and thus advantage Plaintiffs' counsel in a fee dispute with *Zanca* counsel. Indeed, those counsel rushed to court so quickly after learning of the *Zanca* settlement that they apparently lacked time to find plaintiffs who actually purchased something from Epic Games. Although the case had an improper genesis, however, Epic Games mooted it through a proper means.

Epic Games' acceptance of K.W.'s disaffirmation was not a "pick off" of a proposed class plaintiff, for four reasons. First, Plaintiffs should have, but did not, provide Epic Games with pre-suit notice and an opportunity to respond to their invocation of Family Code § 6710. Epic Games should have had the right to honor K.W.'s disaffirmation before it ever became the subject of a lawsuit. Second, contractual disaffirmation is an inherently personal right that one person cannot invoke on behalf of another or as a class representative. Whether or not someone else can or should walk away from their ability to play Epic Games' games is not an appropriate subject for a class action. Third, before K.W. filed this case, Epic Games had changed its policies to require *adults* to enter payment information for purchases from the company. This separately moots any request for prospective injunctive relief. Fourth, also before K.W. filed this case, Epic Games had agreed in the *Zanca* settlement to allow any minors who previously transacted with the company to disaffirm their purchases and obtain benefits from a settlement fund. By virtue of having obtained full relief on his personal claim, however, K.W. no longer has standing to participate in the settlement.

If, for some reason, the Court does not stay Plaintiffs' claims or dismiss them for lack of standing, the Court should compel Plaintiffs to arbitrate whatever claims they still possess. One cannot play *Fortnite* without agreeing to the *Fortnite* End User License Agreement ("EULA"). The EULA states prominently on its first page that only an <u>adult</u> may accept it, precluding minor disaffirmation. Then, whenever someone seeks to make an in-game purchase from Epic Games, such as the purchases allegedly at issue in this case, Epic Games' system requires an <u>adult</u> to enter the credit card number or other payment information, to confirm that he or she is an <u>adult</u> and the authorized cardholder, and to accept the EULA in connection with the purchase. The EULA is a standard "clickwrap" agreement that requires arbitration of disputes on an individual basis. It applies here and precludes K.W.'s and Ms. Williams' attempt to litigate their claims.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION         - 2 -         CASE NO. 3:21-cv-00976-CRB

## FACTUAL AND PROCEDURAL BACKGROUND

### The Free-to-Play Fortnite Game and Its Optional In-Game Purchases

Epic Games' *Fortnite*, launched in late 2017, quickly became one of the most successful video games of all time with hundreds of millions of players around the world.  *See* Complaint ("Compl," Dkt. No. 1) ¶¶ 10, 15.  In "*Battle Royale*" mode, *Fortnite* is "free-to-play," but offers items for sale within the game "such as 'skins' (uniforms), 'gliders' (parachutes), 'emotes' (dance moves), materials, ammunition, and other things." *Id.* ¶ 12.  Players also may purchase items such as a "Battle Pass," which offers extra game content and other "in-game extras." *Id.*  Players make these in-game acquisitions using the *Fortnite* in-game virtual currency, known as "V-Bucks." *Id.* ¶ 13.  Players can earn V-Bucks through game play or, if they wish to acquire more in-game items than their earned V-Bucks account allows, players may purchase V-Bucks from Epic Games or from third parties (*i.e.*, Sony or Microsoft) whose platforms can be used to play *Fortnite*.  *See id.* ¶¶ 10, 13, 19.  The smallest quantity of V-Bucks a player may purchase is 1,000 V-Bucks, currently priced at $7.99.  *See id.* ¶ 22.  A *Fortnite* player need not purchase or use V-Bucks; players play the game without making any in-game purchases.  Plaintiffs do not allege otherwise.

As Plaintiffs' Complaint acknowledges, players can make one-time purchases of V-Bucks without storing a method of payment usable for future purchases.  *See* Compl. ¶ 24.  Players can, but need not, store a method of payment for future purchases from Epic Games.  *See id.*  Plaintiffs claim (correctly) that some platforms on which *Fortnite* can be played, such as Sony's PlayStation or Microsoft's Xbox, also allow storage of payment methods for transactions with those platforms.  *See id.* ¶ 29.  The disclosures associated with doing so, however, are in the control of the companies that write them.  As for Epic Games' disclosures, Plaintiffs' allegations are demonstrably false in claiming that "Epic Games does not have any parental control or notification system," and that Epic Games "does not provide players with a history of their purchases of items or game content in *Fortnite*" when players transact directly with Epic Games (*id.* ¶¶ 27-30, 37).

Plaintiffs correctly note that Epic Games describes purchases of V-Bucks and Battle Passes as "nonrefundable" (Compl. ¶¶ 32, 40), but describing an item as nonrefundable says nothing about a minor's right to disaffirm a contract.  The *Fortnite* EULA, which all players must affirmatively

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

- 3 -

CASE NO. 3:21-cv-00976-CRB

accept in order to be able to play *Fortnite*, states that "[a]ll purchases of Purchased Game Currency and Content are final and not refundable, transferable, or exchangeable under any circumstances, ***except as otherwise required by applicable law***." Declaration of John Farnsworth ("Farnsworth Decl."), Ex. A at ¶ 4 (emphasis added). The EULA thus does not prohibit players from invoking any legal entitlement to a refund. As for purchases of other items, which Epic Games does not describe as "nonrefundable," Epic Games allows all players, regardless of age, to reverse up to three such transactions during the lifetime of an account, each within 30 days of the exchange. *See* Compl. ¶ 33. When players exercise this option, Epic Games removes the acquired item from the player's account and redeposits the V-Bucks used to acquire the item. *See id.* The existence of this system does not prevent players from seeking refunds for other purchases as "otherwise required by applicable law," as set forth in the EULA.

### Plaintiffs' "Disaffirmation" Claims Pursuant to Family Code § 6710

Plaintiffs contend that Family Code § 6710, which provides that "a contract of a minor may be disaffirmed by the minor," allows minor players of *Fortnite* to obtain refunds for in-game purchases they made with their "own money." In [*White*] *v. Epic Games, Inc.*, 435 F. Supp.3d 1024 (N.D. Cal. 2020),[1] the court addressed a different minor's disaffirmation claim and held that, under the circumstances of that case, the minor could pursue a claim for declaratory judgment regarding the application of Family Code § 6710 to his claims. *See id.* at 1044-45. After that ruling, however, Epic Games changed its purchasing policies to preclude minors from entering payment account information into Epic Games' payment system. *See* Farnsworth Decl. ¶ 9. Since that change, which has been in place for the past year, minors have not been able to transact with Epic Games except as explicitly authorized by an adult credit card/debit card holder. One purpose of this change was to address the disaffirmation issue. *See id.* ¶¶ 9-10.

Once Epic Games made this change, if an account already had a payment method stored for future use, Epic Games required an <u>adult</u> to reenter some of the payment account information—the credit card's CVV number and the city, state, and ZIP code of the billing address—and to confirm

---

[1] In that initial decision, the case was captioned "*Doe v. Epic Games*" because the plaintiffs sued anonymously. The Court required the plaintiffs to comply with Fed. R. Civ. P. 10(a), and after they did so, the case became *White v. Epic Games*.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION        - 4 -        CASE NO. 3:21-CV-00976-CRB

that the person entering this information was an adult and authorized user of the payment method. *See* Farnsworth Decl. ¶ 9. This adult also must separately agree to the *Fortnite* EULA, including its dispute resolution terms. *See id.* ¶¶ 9-10. Specifically, before allowing purchases with or the storage of any payment method, Epic Games requires the purchaser to confirm that s/he—the person who entered the payment information—to "represent that I am over 18 and an authorized user of this payment method, and I agree to the End User License Agreement." *Id.*

### Plaintiffs' **Fortnite** *Account, In-Game Purchase History, and Disaffirmation*

From the time of *Fortnite*'s launch in the summer of 2017, all users have had to affirmatively agree to the *Fortnite* EULA before they could begin playing the game in any mode or on any platform. *See* Farnsworth Decl. ¶ 2. Every version of the *Fortnite* EULA in effect from the time the game launched in the summer of 2017 through the present date called for disputes (or, once Epic Games added an arbitration requirement to the EULA, any non-arbitrable disputes) to be heard in North Carolina courts and for all disputes to be governed by North Carolina law. *See id.* ¶ 3. When someone wishes to begin playing *Fortnite*, the EULA is displayed on-screen for the user. The EULA is a standard "clickwrap" agreement, which players must affirmatively accept by completing a two-step process  First, the user must affirmatively accept the agreement by checking a box that reads, "I have read and agree with the End User License Agreement." After clicking that box, the user must confirm a second time by clicking an "Accept" button before playing. Unless the user clicks the box that states, "I have read and agree with the End User License Agreement" and then clicks "Accept," the user cannot access the *Fortnite* platform. *See id.* ¶¶ 4, 7-8. Epic Games periodically updates the *Fortnite* EULA, and whenever it does so, players must accept the new version in order to continue playing. *See id.* ¶ 5. If players do not wish to be bound to the amended EULA, they must stop playing *Fortnite*. *See id.*

Epic Games' records reflect that the account Plaintiffs identified as belonging to K.W. was created on January 24, 2018, using a Microsoft Xbox. *See* Farnsworth Decl. ¶ 12. If a user who creates a *Fortnite* account on a platform takes the further step of creating an Epic Games account, s/he can play *Fortnite* in his or her account using any of multiple platforms. *See id.* The person who created K.W.'s account took this subsequent step on April 28, 2018. *See id.*

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION                - 5 -                CASE NO. 3:21-CV-00976-CRB

K.W.'s *Fortnite* account was active from its inception through 2020 and into 2021. *See* Farnsworth Decl. ¶ 13. Amended versions of the EULA were accepted in the account on at least *eight* separate occasions during those years: March 16, 2019, June 27, 2019, July 30, 2019, October 23, 2019, May 21, 2020, May 22, 2020, September 2, 2020, and September 25, 2020. *See id.* Plaintiffs' Complaint alleges that K.W. himself created the account and accepted the EULA in January 2018. *See* Compl. ¶ 43. The Complaint does not say who accepted it on the other seven occasions. All versions of the EULA accepted in K.W.'s account (1) stated prominently, in all-capitalized text, that only an adult could accept it, and (2) also stated prominently, in bold, all-capitalized text, that the EULA contains a binding, individual arbitration requirement and a time-limited right to opt out of it. *See* Farnsworth Decl. ¶¶ 14-15. Neither K.W. nor Ms. Williams opted out of the arbitration requirement within the 30-day time limit to do so. *See id.* ¶ 24.

Specifically, the EULA requires "Disputes" between Epic and players to "be settled by binding individual arbitration conducted by the Judicial Arbitration Mediation Services, Inc. ('JAMS') subject to the U.S. Federal Arbitration Act and federal arbitration law and according to the JAMS Streamlined Arbitration Rules and Procedures effective July 1, 2014 (the 'JAMS Rules') as modified by this agreement." Farnsworth Decl. ¶ 16 & Ex. A § 12.3. The EULA defines "Disputes" broadly to include "any dispute, claim, or controversy…between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including without limitation the validity, enforceability, or scope of this Binding Individual Arbitration section." *Id.* It further specifies that "You and Epic agree to arbitrate all Disputes regardless of whether the Dispute is based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory." *Id.* Under the EULA, "[W]hether a dispute is subject to arbitration under this Agreement will be determined by the arbitrator rather than a court." *Id.* All of this is called out prominently at the top of the EULA, as follows:

**THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION AND CLASS-ACTION WAIVER PROVISION. IF YOU ACCEPT THIS AGREEMENT, YOU AND EPIC AGREE TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION AND GIVE UP THE RIGHT TO GO TO COURT INDIVIDUALLY OR AS PART OF A**

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION                - 6 -                CASE NO. 3:21-cv-00976-CRB

**CLASS ACTION, AND EPIC AGREES TO PAY YOUR ARBITRATION COSTS FOR ALL DISPUTES OF UP TO $10,000 THAT ARE MADE IN GOOD FAITH (SEE SECTION 12).  YOU HAVE A TIME-LIMITED RIGHT TO OPT OUT OF THIS WAIVER.**

*Id.* ¶¶ 15-16 & Ex. A.

Throughout the life of K.W.'s account, only two in-game purchases were made within the account from Epic Games.  *See* Farnsworth Decl. ¶ 18.  The first purchase was on March 29, 2020.  The purchaser used a MasterCard to buy 1,000 "V-Bucks," the *Fortnite* in-game currency, at a cost of $9.99.  The second purchase was on July 19, 2020.  The same person used a Visa credit card to purchase "Rainbow Six Siege Deluxe Edition" at a cost of $9.89.  *See id.* ¶ 19.

**The purchaser on both occasions was not K.W. or his mother, Jillian Williams.**  *See* Farnsworth Decl. ¶ 18.  The purchaser was a non-party to this case, a female resident of Mission Viejo, California, who may or may not be related to K.W. and Ms. Williams.  *See id.*  This person used two different credit cards for the two purchases and did not store either credit card in Epic Games' system for future purchases.  In other words, each was a one-time purchase.  *See id.*  At least for the second purchase, the purchaser needed to affirm that she was an adult and an authorized user of the card, as reflected above.  *See id.* ¶ 19.

These two transactions were the only purchases from Epic Games associated with K.W.'s account.  *See* Farnsworth Decl. ¶ 18.  K.W. did not spend his "own money" on any purchases from Epic Games, and he did not spend Ms. Williams' money, either.  It is not true, moreover, that "Epic Games did not provide K.W. with a purchase history."  Compl. ¶ 48.  Every Epic Games account holder can view his or her purchase history from within the account.  *See* Farnsworth Decl. ¶ 25.

Other in-game purchases were made from K.W.'s account, but these were not transactions with Epic Games.  A user of K.W.'s account had eight *Fortnite* in-game transactions with Microsoft, conducted on an Xbox, and four with Sony, conducted on a PlayStation 4.  *See* Farnsworth Decl. ¶¶ 20-21.  These were transactions between the user and those third parties; Epic Games was not a party to those transactions and has no information about the method(s) of payment used.  *See id.* ¶ 20.  Microsoft's and Sony's systems merely notified Epic Games' system whenever a transaction was complete so that Epic Games could add the necessary entitlements to the player's

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

- 7 -

CASE NO. 3:21-cv-00976-CRB

*Fortnite* account.  *See id.*  Epic Games can assume the price the player paid for the items based on the price that Epic Games itself would have charged had the player purchased the item directly from Epic Games, but cannot be certain about the charge.  *See id.*  If the purchaser paid the same prices for these items that Epic Games would have charged for them on the dates in question, the total price would have been $214.99.  *See id.* ¶ 21.

Epic Games was not able to locate K.W.'s account or research his transaction history until Plaintiffs provided Epic Games with K.W.'s full name and his Epic Games screen name.  *See* Farnsworth Decl. ¶ 11.  That occurred on February 17, 2021.  *See id.*  The next day, February 18, Epic Games provided Plaintiffs with this information about K.W.'s account.  *See id.* ¶¶ 22-23.  In that same letter, Epic Games honored K.W.'s disaffirmation and sent Plaintiffs a check in the amount of $234.87.  That amount reflected the $19.88 paid to Epic Games and the $214.99 that Epic Games assumes Plaintiffs paid to third parties.  *See id.* ¶ 23.  In subsequent correspondence, Plaintiffs' counsel acknowledged receipt of that check but purported to reject it.  *See* Declaration of Jeffrey S. Jacobson ("Jacobson Decl.") ¶¶ 7-8.

### *The Zanca Class Action Settlement And Its Resolution of Disaffirmation Claims*

In January 2021, <u>before</u> Plaintiffs filed their Complaint in this matter, Epic Games agreed to a nationwide class action settlement that, among other things, allows minors who made *Fortnite* in-game purchases, and who claim the ability to disaffirm those purchases under any state's laws, to receive payments of up to $50.00.  *See* Jacobson Decl. ¶ 2-3.  A judge of the North Carolina Superior Court, Wake County Division, signed an order preliminarily approving that settlement on February 25, 2021, and Epic Games submitted that order to this Court in connection with a Motion to Stay this case ("Stay Motion") while the settlement approval process continues.  *See* Dkt. No. 18-3.  As explained in the Stay Motion, there can be no dispute that Plaintiffs are members of the proposed settlement class or that all of the claims they assert in this case fall within the settlement's definition of "Released Claims."  One purpose of this settlement, in conjunction with the changes Epic Games made to its payment acceptance processes to preclude minors from entering payment information, is to put to rest all potential backward-looking, pre-change disputes regarding disaffirmation.  *See* Jacobson Decl. ¶¶ 2, 5.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION          - 8 -          CASE NO. 3:21-CV-00976-CRB

1

## ARGUMENT

2 **I.     The Court Should Dismiss This Action for Lack of Subject-Matter Jurisdiction.**

3       **A.     *Epic Games' Acceptance of K.W.'s Disaffirmation Renders the Case Moot.***

4       Because K.W. disaffirmed his entire contractual relationship with Epic Games, and because

5 Epic Games honored that disaffirmation and refunded all monies K.W. spent on *Fortnite* in-game

6 purchases (including transactions that were not with Epic Games), Plaintiffs have no further

7 business before this Court.  Their request for a declaratory judgment is moot.  *See City of Erie v.*

8 *Pap's A.M.*, 529 U.S. 277, 287 (2000) (a "case is moot when the issues presented are no longer

9 'live' or the parties lack a legally cognizable interest in the outcome.").  Consequently, the Court

10 should dismiss Plaintiffs' Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction.

11 *See Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) ("federal courts can only

12 adjudicate live cases or controversies."); *Koller v. Harris*, 312 F. Supp. 3d 814, 822 (N.D. Cal.

13 2018) ("courts lack subject matter jurisdiction to adjudicate moot claims.").   And because

14 disaffirmation annulled K.W.'s purchases, K.W. cannot maintain any other kinds of claims about

15 those purchases.  The court in *R.A. v. Epic Games, Inc.*, No. 5:19-cv-325-BO, 2020 WL 865420

16 (E.D.N.C. Feb. 20, 2020), considered these exact issues and dismissed similar claims as moot.

17       The allegations in *R.A.* related to another minor's in-game purchases while playing *Fortnite*.

18 *See R.A.*, 2020 WL 865420, at *1.  When Epic Games moved to require that plaintiff to arbitrate

19 his claims pursuant to the *Fortnite* EULA, the plaintiff, "[s]eeking to avoid arbitration and venue

20 transfer, . . . purported to disaffirm [the EULA], citing his minor status."  *Id.*  Just as Epic Games

21 did in this case, it immediately advised the plaintiff in *R.A.* that it would accept his disaffirmation

22 and provide a refund.  That mooted the case, including the Plaintiffs' claims alleging unfair trade

23 practices.  Applying California law, the *R.A.* court held that R.A.'s disaffirmation, and Epic Games'

24 acceptance of his, "void[ed] the in-game purchases" and thereby "erase[d] the entire basis for

25 [R.A.'s] claims."  *Id.* at *2.  A plaintiff "cannot void the transactions with defendant and receive

26 his refund while simultaneously maintaining causes of action that arose solely from those

27 transactions."  *Id.*  "Because plaintiff's disaffirmance wipes out the entire basis for his claims, his

28 amended complaint must be dismissed."  *Id.*  The same should happen here.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

- 9 -

CASE NO. 3:21-CV-00976-CRB

1    Disaffirmation is an equitable remedy that courts must construe, to the extent possible, in a

2    manner that protects *both parties* to the contract.  "The law intends [the right to disaffirm] simply

3    as a shield to prevent the infant from injustice"; it is not "a sword to be used to the injury of others."

4    *MacGreal v. Taylor*, 167 U.S. 688, 701 (1897); *see also Hastings v. Dollarhide*, 24 Cal. 195, 216

5    (1864) (same).  In other words, the right to disaffirm contracts is limited and not intended to produce

6    windfalls.  Disaffirmation of a contract renders it a nullity and yields only a refund.  *See I.B. ex rel.*

7    *Fife v. Facebook, Inc.*, 905 F. Supp.2d 989, 1000 (N.D. Cal. 2012), *citing Scollan v. Gov't*

8    *Employees Ins. Co.*, 222 Cal. App.2d 181, 183-84 (1963) (Upon disaffirmation, "the contract

9    becomes a nullity; it and each of its terms and provisions cease to be subsisting or enforceable

10   against the other party . . . .") (citation and internal quotation marks omitted).  "The effect of

11   disaffirmation by a minor is large the same as rescission, and as such a legal action for

12   disaffirmation is one in equity, and 'the trial court is vested with a broad discretion to see that equity

13   is done.'"  *T.K. v. Adobe Sys., Inc.*, No. 17-CV-4595-LHK, 2018 WL 1812200, at *4 (N.D. Cal.

14   Apr. 17, 2018), *quoting Deck v. Spartz, Inc*., No. 2:11-cv-1123-JAM-DAD, 2011 WL 7775067, at

15   *6 (E.D. Cal. Sept. 27, 2011).

16       The refund that K.W. already has received, therefore, is all K.W. can expect after

17   disaffirming his purchases.  *See I.B.*, 905 F. Supp.2d at 1001 ("Upon disaffirmance the minor is

18   entitled to recover all benefits paid under the contract."), *quoting Burnand v. Irigoyen*, 30 Cal.2d

19   861, 866 (1947); *Gillis v. Whitley's Disc. Auto Sales, Inc.*, 319 S.E.2d 661, 667 (N.C. App. 1984)

20   ("As a minor, Wallace is only entitled to recover the consideration he personally has paid or is

21   continuing to pay under a valid loan agreement . . . .  A minor is not entitled to a windfall.  He is

22   merely to be made whole.") (internal citation omitted).

23       In this case, as in *R.A.*, the minor plaintiff has been made whole.  Indeed, he has been made

24   more than whole.  K.W. never had any transactions with Epic Games, using his own money or

25   anyone else's.  Nevertheless, Epic Games has provided a refund for all transactions, regardless of

26   who made them and despite Epic Games itself not having been a party to most of them.

27       This case thus is very different from *White v. Epic Games*.  In *White*, the plaintiff sent Epic

28   Games a Consumers Legal Remedies Act demand letter before suing, and then filed the

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION          - 10 -          CASE NO. 3:21-cv-00976-CRB

disaffirmation lawsuit. Because Epic Games did not respond to the CLRA letter, the Court found those two steps "sufficient to disclose plaintiff's unequivocal intent to repudiate the binding force of" the *Fortnite* EULA. *White*, 435 F. Supp.3d at 1037, 1044 (quotation and citation omitted).[2] Here, by contrast, Plaintiffs concede that the filing of their lawsuit constituted Epic Games' first notice of K.W.'s attempted disaffirmation. *See* Compl. ¶ 54. Epic Games reached out to Plaintiffs immediately after seeing the lawsuit and reserved the right to accept K.W.'s disaffirmation as soon as Plaintiffs provided Epic Games with K.W.'s name and account number so that Epic Games could investigate K.W.'s claims. *See* Jacobson Decl. ¶ 6. When Plaintiffs provided that information on February 17, 2021, Epic Games responded in less than a day, accepting the disaffirmation and providing the necessary refund. *See id.* ¶ 6-7.

*White* recognized that had Epic Games honored that plaintiff's disaffirmation before the dispute matured into a lawsuit, the situation would have been different. For that reason, Epic Games' honoring K.W.'s disaffirmation is not akin to the "unaccepted settlement offer" at issue in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), and does not reflect an attempt to "pick off" a putative class representative. In *Campbell-Ewald*, 136 S. Ct. at 667-68, the defendant proposed a settlement and filed a Rule 68 offer of judgment reflecting it, but the plaintiff did not accept the offer. Here, by contrast, it was K.W. who proposed a resolution of his claims by invoking the statutory right of disaffirmation. Epic Games accepted that proposal and provided the necessary refund. Further—and leaving aside that disaffirmation, by definition, is an individual right that one person cannot invoke on behalf of another—there never was any "class" for K.W. to represent in

---

[2] Plaintiffs here seek two different declaratory judgments. First, they seek the same declaration as did the plaintiff in *Doe v. Epic Games*, pertaining to the meaning of Family Code § 6710. *See* Compl. ¶¶ 60-65. Next, they seek a declaration that K.W.'s alleged "own money" purchases are not only voidable, but *void* pursuant to Family Code § 6701(c), which precludes minors from making contracts "relating to any personal property not in the immediate possession or control of the minor." *See id.* ¶¶ 66-71. There is no authority inside or outside California, however, that construes this or any similar law as precluding minors from exchanging money for goods or services. Plaintiffs' argument seems to be that if a minor uses a parent's credit card to make a purchase, the minor somehow is "delegating" to the merchant "the power to debit or withdraw funds in the possession or control" of the parents. *Id.* ¶ 16. That, however, is not how credit cards work. If a parent allows a minor to use a credit card, the parent is appointing the minor as her agent, and minors cannot disaffirm contracts entered into as agents. If a minor uses a parent's credit card without permission, the merchant may assume that the transaction occurred *with* permission. Whether the parent is responsible for the transaction is between the parent and her credit card provider and may depend upon whether the parent filed charges related to the unauthorized use.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION       - 11 -       CASE NO. 3:21-cv-00976-CRB

1   this case.  Epic Games already had settled disaffirmation-related claims with the putative class in

2   *Zanca* before K.W. filed this lawsuit.  *See* Jacobson Decl. ¶¶ 2-3.  K.W. can opt himself out of the

3   *Zanca* class, but cannot exercise that right on behalf of others.

4       For the reasons stated by the *R.A.* court, therefore, this case is moot and the Court should

5   dismiss plaintiffs' Complaint.

6       **B.**   ***Plaintiffs Made No Purchases from Epic Games and Therefore Lack Standing.***

7       In providing Plaintiffs with their requested refund, Epic Games elected to treat the purchases

8   made from K.W.'s account as though K.W. himself made them and as though Epic Games was a

9   party to all of them.  The reality, however, is that neither K.W. nor Jillian Williams ever made any

10  purchases from Epic Games.  Accordingly, separate from the mootness created by Epic Games

11  having honored K.W.'s disaffirmation, Plaintiffs never had standing to sue Epic Games over

12  purchases they did not make.

13      To establish standing under Article III, Plaintiffs must have (1) "an injury in fact, (2) that is

14  fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by

15  a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *quoting Lujan*

16  *v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Salmon Spawning & Recovery*

17  *Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (same).  To establish "injury in fact,"

18  Plaintiffs must demonstrate "'an invasion of a legally protected interest' that is 'concrete and

19  particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 136 S. Ct. at

20  1548 (quoting *Lujan*, 504 U.S. at 560).  Possessing such an injury is a threshold requirement for

21  federal court subject-matter jurisdiction. *Lujan*, 504 U.S. at 559-60.  If Plaintiffs lack standing, the

22  action should be dismissed. *See Spokeo, Inc.*, 136 S. Ct. at 1547.

23      Plaintiffs lack such standing here.  The two purchases from Epic Games made from K.W.'s

24  account were not made using a method of payment belonging to K.W. or Jillian Williams.  *Compare*

25  Compl. ¶ 45 to Farnsworth Decl. ¶ 18.  Both of these transactions were made on credit cards held

26  in the name of the same third-party, a female resident of Mission Viejo, California. *See* Farnsworth

27  Decl. ¶ 18.  All other purchases in K.W.'s account were not made from Epic Games and Epic

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION        - 12 -        CASE NO. 3:21-cv-00976-CRB

1   Games was not a party to them.  *See id.* ¶ 21.

2   Because Plaintiffs' did not make purchases from Epic Games, they have no "injury in fact,"

3   separate and apart from the mootness created by Epic Games' decision to honor K.W.'s

4   disaffirmation request.  In short, Plaintiffs have not suffered any actual, concrete harm as a result

5   of any transactions with Epic Games.  Without such injury, Plaintiffs lack standing.  *See Friends*

6   *of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2002); *Larsen v. Trader Joe's Co.*,

7   No. C 11-05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) ("plaintiffs do not have

8   standing to bring this claim because they did not purchase the Crescent Rolls and therefore, as a

9   matter of law, could not have suffered a particularized injury as required by Article III.").  Plaintiffs'

10  claims should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).

11  ## II.   Alternatively, the Court Should Compel Arbitration.

12  If K.W. and Jillian Williams possess claims against Epic Games that Epic Games'

13  acceptance of K.W.'s disaffirmation did not moot, or if Plaintiffs somehow have standing to pursue

14  any of their claims despite their lack of injury, any such claims belong in arbitration, as required

15  by the *Fortnite* EULA.  Accordingly, if this action is not dismissed for lack of subject-matter

16  jurisdiction, the Court should compel Plaintiffs to arbitrate whatever claims they have.

17  ### A.   *K.W.'s Account's Acceptance of the EULA is Binding.*

18  The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration."

19  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010) (citation omitted).  The FAA also

20  requires courts to "rigorously enforce agreements to arbitrate."  *Shearson/Am. Express, Inc. v.*

21  *McMahon*, 482 U.S. 220, 226 (1987); *see also Am Express Co. v. Italian Colors Rest.*, 133 S. Ct.

22  2304, 2309 (2013) ("[C]onsistent with [the] text [of the FAA], courts must 'rigorously enforce'

23  arbitration agreements according to their terms.") (citation omitted).

24  The Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues

25  should be resolved in favor of arbitration, whether the problem at hand is the construction of the

26  contract itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone*

27  *Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  A party aggrieved by the refusal

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION          - 13 -          CASE NO. 3:21-cv-00976-CRB

1    of another party to arbitrate under a written agreement may petition the Court for an order

2    compelling arbitration as provided for in the parties' agreement.  *See* 9 U.S.C. § 4.

3         "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court,

4    but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues

5    as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470

6    U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4; *Concepcion*, 563 U.S. at 339

7    ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and

8    enforce them according to their terms").  "The court's role under the [FAA] is therefore limited to

9    determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

10   agreement encompasses the dispute at issue," in which case the FAA "requires the court to enforce

11   the arbitration agreement in accordance with its terms."  *Daugherty v. Experian Info. Solutions,

12   Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012).  "While the Court may not review the merits …

13   in deciding a motion to compel arbitration, [it] may consider the pleadings, documents of

14   uncontested validity, and affidavits submitted by either party."  *Macias v. Excel Bldg. Servs., LLC*,

15   767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal quotation and citation omitted).

16        Here, there is no question that a valid, binding arbitration agreement exists.  The EULA is

17   a standard "clickwrap" agreement that requires players to "click a button explicitly agreeing to the

18   terms of the contract."  *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014);

19   *see also Timothy Dupler v. Orbitz, LLC*, No. CV182303RGKGSJX, 2018 WL 6038309, at *2 (C.D.

20   Cal. July 5, 2018) ("Clickwrap agreements require [persons] to 'click on an "I agree" box after

21   being presented with a list of terms'") (citation omitted); *McKee v. Audible, Inc.*, No. CV 17-1941-

22   GW (Ex), 2017 WL 4685039, at *6 (C.D. Cal. July 17, 2017) (collecting cases holding that such

23   agreements are binding "even if the user does not actually read the terms of services").  Plaintiffs'

24   Complaint does not appear to dispute that the *Fortnite* EULA is an enforceable clickwrap

25   agreement, and the court in *Heidbreder v. Epic Games, Inc.*, 438 F. Supp.3d 591 (E.D.N.C. 2020),

26   enforced the EULA even where a minor acted with "apparent authority" in accepting it.

27        In *Heidbreder*, as here, the parent of a minor *Fortnite* player "argues he never accepted the

28   terms of the EULA.  Instead, it was his minor child, K.H., who was playing *Fortnite* and agreed to

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

- 14 -

CASE NO. 3:21-CV-00976-CRB

the EULA on March 15, 2019." *Heidbreder*, 438 F. Supp.3d at 596.  The minor attempted to invoke a right of disaffirmation, but the court held the minor had no such right.  "[U]nder basic principles of principal-agent law, K.H. was acting as plaintiff's agent and had both actual and apparent authority to agree to the EULA and bind" the parent.  *Id.*  The parent was aware of the minor's daily game play.  "Put another way, the evidence demonstrates that plaintiff created an Epic Games account and then gave K.H. free rein over the account for over a year.  Under such circumstances, K.H. reasonably believed he had the implied actual authority to click 'agree' to the EULA.  No genuine issue of fact exists as to K.H.'s actual authority."  *Id.* at 597.  Just as importantly, Epic Games "was justified in believing that the user of plaintiff's Epic Games account possessed the authority to agree to the EULA."  *Id.*

Here, as in *Heidbreder*, a minor alleges that he clicked the accept button to an agreement that required acceptance by an adult.  Compl. ¶ 43.  Epic Games was justified in believing that the person who accepted the agreement was an adult.  In addition to that initial acceptance of the EULA, amended versions of the EULA were affirmatively accepted in K.W.'s account on eight more occasions in 2019 and 2020, each time by someone representing himself or herself to be an adult.  Plaintiffs' Complaint says nothing about who accepted the EULA on those occasions.  Further, if Plaintiffs' contention is that K.W. used one of Jillian Williams' payment methods to make a purchase from Epic Games—even though Epic Games has no record of such a purchase—the person who entered Ms. Williams' payment method into Epic Games' system would have had to state affirmatively that s/he was over 18 and an authorized user of the payment method, and to affirmatively agree to the *Fortnite* EULA.  Even more than in *Heidbreder*, therefore, which involved Epic Games' prior payment procedures, Epic Games would have been fully justified in believing that the person who entered Ms. Williams' payment methods into K.W.'s account was an adult and an authorized user of the payment method.

The EULA's first page clearly advises all persons seeking to open a *Fortnite* account that (1) "[t]his agreement contains a binding, individual arbitration and class-action waiver provision," and (2) "[t]o enter into this license agreement, you must be an adult of the legal age of majority," and that "[i]f you are under the legal age of majority, your parent or legal guardian must consent to

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

- 15 -

CASE NO. 3:21-cv-00976-CRB

this agreement." Here, the act of checking the checkbox and clicking the "Accept" button to acknowledge the EULA demonstrates assent to the agreement, including its arbitration provision. Whether K.W. did so himself, as alleged (Compl. ¶ 43), and thereby misrepresented his age to Epic Games, or whether Jillian Williams, K.W.'s mother, did so and thereby agreed to the EULA on K.W.'s behalf, the result is the same: Plaintiffs must arbitrate their claims as required by any of the *eight* acceptances of the EULA. *See, e.g.*, *Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWX), 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (finding plaintiff assented to arbitration where website users "were required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button . . . .").

None of these facts, nor the decision in *Heidbreder*, were at issue when the *White* court denied Epic Games' motion to compel arbitration of that minor plaintiff's claims. In *White*, a single acceptance of the EULA was at issue and the Court held that the minor plaintiff could disaffirm that acceptance. *See White*, 435 F. Supp. 3d at 1035. The minor plaintiff in *White* affirmed to the Court that he had ceased playing *Fortnite* and "has no intention of playing *Fortnite* in the future." *Id.* at 1037. K.W. here has provided no such assurance. As the *White* Court confirmed, one cannot continue to play *Fortnite* and purport to disavow only the arbitration requirement. *Id.*, *citing E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012). In *White*, there was no separate acceptance of the EULA by an adult, and confirmation of that person's adult status, in connection with the purchases in that plaintiff's account. Accordingly, the decision denying the motion to compel arbitration in *White* has no bearing on Plaintiffs' obligation to arbitrate.[3]

---

[3] In addition to requiring arbitration of disputes, the *Fortnite* EULA provides that "any Disputes not deemed subject to binding individual arbitration" must be litigated exclusively in "the Superior Court of Wake County, North Carolina, or, if federal court jurisdiction exists, the United States District Court for the Eastern District of North Carolina." Farnsworth Decl. Ex. A (EULA) at § 11. Players are required to waive any jurisdictional, venue, or inconvenient forum objections. *See id.* Here, if the Court finds the EULA enforceable, it should compel arbitration. In the unlikely event that the Court finds the EULA enforceable but holds that Plaintiffs' claims are not subject to arbitration, Epic Games reserves the right to seek transfer pursuant to the EULA. Additionally, Epic Games reserves it right to contest venue, as Plaintiffs have failed to make the requisite showing that venue is proper in the Northern District of California. Plaintiffs plead only that they are residents of the state of California, generally, not the Northern District of California. Epic Games is a Maryland corporation headquartered in Cary, North Carolina, as the Complaint (at ¶ 6) acknowledges. Their pleading does not satisfy 28 U.S.C. § 1391.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION

- 16 -

CASE NO. 3:21-CV-00976-CRB

**B.**     *This Dispute Falls Squarely Within the Scope of the Agreement.*

Not only is there a valid agreement to arbitrate, the agreement encompasses the disputes at issue.  As noted above, Epic Games' EULA defines "Disputes" broadly to include "any dispute, claim, or controversy…between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including without limitation the validity, enforceability, or scope of this Binding Individual Arbitration section."  Farnsworth Decl. ¶ 16 & Ex. A § 12.3.1.  Plaintiffs allege that while playing *Fortnite*, K.W. made in-game purchases, at least some of which he claims he can disaffirm.  These plainly are claims about Plaintiffs' "use or attempted use of Epic's products or services," and therefore are "Disputes" that must be arbitrated pursuant to the EULA.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration …."  *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24; *see also Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 517 (9th Cir. 1991) (recognizing the presumption in favor of arbitration applies with "particular force where the arbitration clause is phrased in broad and general terms").  Any issues raised by Plaintiffs regarding the arbitrability of their claims are for the arbitrator to resolve, as the parties agreed to delegate such scope disputes as stated in the EULA.  Farnsworth Decl. Ex. A at § 12.3.1.  *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 13-MD-2420-YGR, 2015 WL 8293728, at *3 (N.D. Cal. Dec. 9, 2015) (compelling arbitration and directing issue of arbitrability to the arbitrator).

Thus, this Court should compel Plaintiffs' claims to be resolved through individual arbitration.  In that event, this action should either be stayed or dismissed.  *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014) ("a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration.").

//

//

//

//

//

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION                    - 17 -                    CASE NO. 3:21-CV-00976-CRB

1

## **CONCLUSION**

2          Based on the foregoing, Epic Games respectfully requests that the Court dismiss Plaintiffs'

3  Complaint for lack of standing, or else compel the matter to arbitration pursuant to the terms of the

4  duly accepted EULA.

5   Dated:  March 15, 2021                              FAEGRE DRINKER BIDDLE & REATH LLP

6

7                                                        By: */s/ Jeffrey S. Jacobson*
                                                               Jeffrey S. Jacobson (*pro hac vice*)
8                                                             Matthew J. Adler

9                                                        Attorneys for Defendant
                                                         EPIC GAMES, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF MOTION AND
MOTION TO DISMISS OR COMPEL ARBITRATION                - 18 -                CASE NO. 3:21-CV-00976-CRB