1  MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@faegredrinker.com
2  FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
3  San Francisco, California 94111-4180
Telephone:      415-591-7500
4  Facsimile:      415-591-7510
5
JEFFREY S. JACOBSON (*pro hac vice*)
6  Jeffrey.Jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
7  1177 Avenue of the Americas, 41st Floor
New York, New York  10036-2714
8  Telephone:      212-248-3140
Facsimile:      212-248-3141
9
10  Attorneys for Defendant
EPIC GAMES, INC.
11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16

| | |
|---|---|
| 17  K.W., a minor and through K.W.'s guardian, Jillian Williams, and JILLIAN WILLIAMS, individually, on behalf of themselves and all others similarly situated, | Case No. 3:21-cv-00976-CRB |
| 18 | **DEFENDANT EPIC GAMES, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY RE: MOTION TO STAY (Dkt. No. 18)** |
| 19                      Plaintiffs, | |
| 20 | Date:      April 29, 2021 |
| 21                 v. | Time:      10:00 a.m. |
| 22  EPIC GAMES, INC., | Ctrm:      6 – 17th Floor |
| 23                      Defendant. | Judge:     Hon. Charles R. Breyer |
| 24 | Action Filed:   February 8, 2021 |
| | Trial Date:     None set |

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF SUPPLEMENTAL
AUTHORITY                                    - i -              CASE NO. 3:21-CV-00976-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF SUPPLEMENTAL AUTHORITY

Pursuant to Northern District of California Local Rule 7-3(d)(2), Defendant Epic Games, Inc. ("Epic Games") respectfully submits this Notice of Supplemental Authority concerning Epic Games' fully-briefed Motion to Stay (Dkt. No. 18) set for hearing on April 29, 2021.  Attached hereto as Exhibit 1 is a true and correct copy of the "Intervenors' Complaint and Motion to Dismiss And For Jurisdictional Discovery" filed on April 6, 2021 by Plaintiffs K.W. and Jillian Williams' in *Zanca v. Epic Games, Inc.*, No. 21-CVS-534 (N.C. Super. Ct., Wake County).[1]

Dated:  April 6, 2021

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Jeffrey S. Jacobson*
     Jeffrey S. Jacobson (*pro hac vice*)
     Matthew J. Adler

Attorneys for Defendant
EPIC GAMES, INC.

---

[1] Epic Games has redacted one sentence of Plaintiffs' motion that contains confidential information, in anticipation of a forthcoming motion to the *Zanca* court to partially seal the document.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S NOTICE OF SUPPLEMENTAL
AUTHORITY                                    - 1 -                    CASE NO. 3:21-CV-00976-CRB

# EXHIBIT 1

NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 534

BEAU ZANCA; ERIC KROHM; A.J., by        )
and through his Guardian CHRIS JONES;   )
Z.K., by and through his Guardian SEAN  )
KINNEY; M.M., by and through his        )
Guardian DAVID MINCES; L.M., by and     )
through his Guardian CHAD MOYER,        )
individually and on behalf of all others )
similarly situated,                     )
                                        )
                Plaintiffs,             )
        v.                              )
                                        )
EPIC GAMES, INC.,                       )
                                        )
                Defendant.              )

**INTERVENORS' COMPLAINT AND
MOTION TO DISMISS AND FOR
JURISDICTIONAL DISCOVERY**

Intervenors K.W., by and through his guardian, Jillian Williams, Jillian Williams

individually, and J.M., by and through his guardian, Maria Garcia, through counsel, file this

intervention complaint and respectfully request that the Court dismiss this case for lack of

subject matter jurisdiction.

1.      This is a made-to-order lawsuit that Plaintiffs never intended to litigate. Plaintiffs

and Defendant stipulated to the complaint in this action in advance and filed it in this Court for

the sole purpose of asking the Court to approve a pre-packaged settlement that will extinguish

the rights of millions of claimants—minor children among them—in the process. Nothing in

North Carolina law permits private parties to burden the Court with collusive class action suits

filed for purposes other than litigating them. This suit should be dismissed as nonjusticiable.

2.      Plaintiffs are minor and adult consumers who allegedly played games called

*Fortnite* and *Rocket League* produced by Defendant Epic Games, Inc. (Compl. ¶¶ 9-13).

Pursuant to a settlement agreement with Epic Games, Plaintiffs filed a sprawling "Stipulated

Complaint" instituting this action that is so far-reaching that a court order approving the settlement of the claims alleged, if granted, will bar virtually anyone who has ever played *Fortnite* or *Rocket League* from making any consumer claim against Epic Games.  (*See* Settlement Agreement, Ex. A ¶ 1.21; Compl. ¶ 114).

3.      Intervenors are minor children who played *Fortnite* and purchased virtual currency and in-game items, as well as the children's guardians.  Intervenors K.W. and Jillian Williams are plaintiffs in a class action pending in federal court in California styled *K.W., etc., et al. v. Epic Games, Inc.*, Case No. 3:21-cv-976-CRB, in which they seek to litigate a limited set of class claims based primarily on the right of minor children to disaffirm contracts with Epic Games.  *K.W.*'s lawsuit is a continuation of an earlier class action lawsuit filed in federal court in California captioned *C.W., et al. v. Epic Games, Inc.*, Case No. 4:19-cv-3629-YGR.  Deepali Brahmbhatt—one of the lawyers representing Plaintiffs in this case—was also one of the lawyers in the *C.W.* litigation. *See C.W. v. Epic Games, Inc.*, Case No. 19-cv-03629 (N.D. Cal. Sept. 3, 2020); *Doe v. Epic Games, Inc.*, 425 F. Supp. 3d 1024 (N.D. Cal. 2020) (describing substance and history of case and identifying counsel).  At the time, she was with a firm called One LLP, but left that firm before the *C.W.* case concluded.

4.      While *C.W.* was pending, three other class actions involving *Fortnite* were litigated in other courts.  Three facts about those cases are significant: (1) none centered on a minor's rights to disaffirm contracts; (2) none were ever filed or pending in this Court; and (3) none were successful at getting past Epic Games' pre-answer motions.

5.      *Krohm v. Epic Games, Inc.*, Case No. 5:19-cv-00173 (E.D.N.C.), was filed in state court in Illinois, removed to federal court, and transferred to the Eastern District of North Carolina.  It alleged data breach claims on behalf of *Fortnite* players whose personal and

2

financial information was exposed to unauthorized third parties.  It was dismissed for lack of standing in October 2019.  *See Krohm v. Epic Games, Inc.*, 408 F. Supp. 3d 717 (E.D.N.C. 2019) (describing substance, history, and disposition of the case).  According to the memorandum in support of preliminary approval of the settlement of this action, the plaintiff appealed arguing that the case should have been remanded to Illinois state court instead of dismissed.

6.     *R.A. v. Epic Games*, Case No. 5:19-cv-00325 (E.D.N.C.), was filed in state court in California, removed to federal court, and transferred to the United States District Court for the Eastern District of North Carolina.  It alleged claims on behalf of consumers who bought "loot boxes" in the *Save the World* play mode in *Fortnite* who claimed to have been misled about what the loot boxes contained.  *R.A.* was dismissed in February 2020.  *See R.A. v. Epic Games, Inc.*, Case No. 5:19-cv-325-BO, 2020 WL 865420 (E.D.N.C. Feb. 20, 2020) (describing substance, history, and disposition of the case).

7.     *Heidbreder v. Epic Games, Inc.*, Case No. 5:19-cv-00348 (E.D.N.C.), was filed in federal court in North Carolina.  Like *Krohm*, it was a data breach class action.  In March 2020, the court compelled the plaintiff to arbitrate his claims on an individual basis only, thus killing the case as a prospective class action.  *See Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591 (E.D.N.C. 2020) (describing substance, history, and disposition of case).

8.     Unlike these three cases, the *C.W.* case in California survived Epic Games' efforts to have it dismissed, sent to individual arbitration, or transferred to a North Carolina federal court.  *See C.W.*, 2020 WL 5257572, at *6; *Doe*, 435 F. Supp. 3d at 1053.  Thus, as of spring 2020, the *C.W.* case was the only class action that threatened Epic Games in any real way.  An observer would have therefore expected any settlement to happen in federal court in California.

9.      Instead, Epic Games chose to go to a mediation with counsel for the plaintiff in the dismissed *Krohm* data breach case in November 2020. (*See* Declaration of Jeffrey S. Jacobsen filed in *K.W.*, Ex. B, at ¶ 6). That mediation produced a settlement agreement that does not even mention the data breach claims the *Krohm* plaintiff alleged. Instead, the resulting settlement purports to resolve virtually any consumer protection claim related to the purchase of virtual currency or in-game items—including any minor disaffirmation claim—by any person who had an Epic Games account and played *Fortnite* or *Rocket League*. (Settlement Agreement, Ex. A., at ¶¶ 1.21, 2-3). It is thus reasonable to infer that plaintiffs' counsel in *Krohm* and Epic Games contemplated a settlement in which (1) Epic Games would get global peace from a wide variety of consumer protection claims that were a bigger problem for Epic Games than the data breach claims alleged in *Krohm*, and (2) plaintiffs' counsel in *Krohm* would get a much bigger attorneys' fee than their dismissed data breach claims could support.

10.     The settlement is built around a "Stipulated Complaint" that the parties agreed Plaintiffs would file in this Court. (*See* Settlement Agreement, Ex. A, at ¶¶ 1.7, 1.21). The scope of the claims contained in the Stipulated Complaint is breathtaking:

- It reaches claims by both minors and adults who purchased "loot boxes" in *Fortnite*, even though *R.A.*—the only case to have alleged such claims—had been dismissed and was not appealed. (Compl. ¶¶ 34-39, Counts I-III).

- It reaches claims by adults that they were misled with respect to virtual currency and items they bought while playing *Fortnite*, even though no lawsuit alleging such claims had been filed. (*Id.* ¶¶ 21-28, Counts I, III).

- It reaches claims by adults that they were misled with respect to virtual currency and items they brought while playing *Rocket League*, even though no lawsuit alleging such claims had been filed. (*Id.* ¶¶ 61-69, Counts I, III).

- It reaches claims by minors based on their rights of disaffirmation with respect to *Fortnite* purchases that had been alleged only in *C.W.* and not in *Krohm*. (*Id.* Counts IV-V).

4

- It reaches claims by minors based on consumer protection laws that had been alleged only in *C.W.* and not in *Krohm*. (*Id.* Count II).

- It reaches claims by minors based on their rights of disaffirmation with respect to *Rocket League* purchases, even though no lawsuit alleging such claims had been filed. (*Id.* Counts II, IV-V).

- It reaches claims by minors based on consumer protection laws with respect to *Rocket League* purchases, even though no lawsuit alleging such claims had been filed. (*Id.* ¶¶ 61-69).

- It reaches the claims of class members going back to 2015, two years before *Fortnite* was widely-released (according to public information) (*Id.* ¶114; *see* https://en.wikipedia.org/wiki/Fortnite (last accessed Mar. 30, 2021)).

The expansive scope of the claims alleged in the Stipulated Complaint means that if the settlement is approved, Epic Games will claim to be released from virtually every conceivable claim by anyone who has ever bought virtual currency or items for use in *Fortnite* or *Rocket League*. (Settlement Agreement, Ex. A, ¶¶ 1.21, 3).

10.     The inclusion of the minor disaffirmation claims asserted only in *C.W.* in the settlement of this action is particularly troublesome. ███████████████████

████████████████████████████████████████
████████████████████████████████████████
███████████████████████████        Epic Games has explained the inclusion of minor disaffirmation claims alleged only in *C.W.* in the settlement by explaining that the settlement discussions were, at some point unknown, "joined by Ms. Brahmbhatt and other counsel for *C.W.* . . . ." (Jacobsen Decl., Ex. B, ¶ 6).  But neither the settlement agreement nor the notice provided to class members explains (1) when and how Ms. Brahmbhatt joined the discussions, (2) whether she actually participated in the negotiation of the class claims or merely agreed to a deal previously decided, (3) how Ms. Brahmbhatt could negotiate for the class while simultaneously negotiating a settlement of C.W.'s individual

claims, or (4) why Ms. Brahmbhatt excluded One LLP, the firm where she worked for most of the *C.W.* case and that remained counsel of record, in the settlement discussions.

11.     The settlement agreement was signed on January 7 and 8, 2021. (Settlement Agreement, Ex. A, at 34-44). Ms. Brahmbhatt caused the *C.W.* case to be voluntarily dismissed on January 8, 2021. On the same day, counsel for the plaintiff in *Krohm* caused their appeal to the Fourth Circuit to be voluntarily dismissed. Two business days later, on January 12, 2021, Plaintiffs filed a complaint in this Court initiating this action.

12.     Neither Plaintiffs nor Epic Games intended to litigate the Stipulated Complaint filed in this court. Almost by definition, a complaint that is stipulated to by the defendant is not meant to be litigated. The claims it asserts were settled before it was filed. The Stipulated Complaint was not drafted for purposes of litigation; it was drafted for purposes of setting the scope of the release Epic Games will gets if the settlement is approved. The fact that it bears a "Plaintiff v. Defendant" caption is a ruse because Plaintiffs and Epic Games do not seek a judicial resolution of disputed issues. All they want is for their settlement to be judicially sanctioned and for the rights of millions of class members, including minors, to be extinguished.

13.     The "judicial power" vested in the courts by Article IV, Section 1 of the North Carolina Constitution does not require that they be conscripted into approving settlements in counterfeit lawsuits. At a minimum, the concept of justiciability prohibits a state court from entertaining "collusive suits" and "feigned issues." *See Comm. To Elect Dan Forest v. Employees Political Action Committee*, 2021 NCSC 6, ¶ 59, 853 S.E. 2d 698, 723 (2021) (citing *Blake v. Askew*, 76 N.C. 325, 326 (1877)). That prohibition should be applied here.

14.     In *Parker v. Raleigh Savings Bank*, 152 N.C. 253, 67 S.E. 492 (1910), the parties participated in a "friendly suit" regarding certain bonds. The defendant set up a defense of false representations, which was really was an effort to have a court to opine on a statute regulating taxation of bonds. *See id.* at 152 N.C. 253, 67 S.E. at 492-93. Describing the case as "a suit made to order," the Supreme Court held that it was not suitable for resolution by a North Carolina court because it did not arise "out of a real controversy between the parties litigant, but [was] instituted solely for the purpose of obtaining the opinion of the court upon a 'feigned issue.'" *Id.*

15.     Similarly, in *Burton v. Durham Realty & Ins. Co., et al.*, 188 N.C. 473, 473, 125 S.E. 3, 4 (1924), the Court considered an action to settle title in which both sides were aligned. It held that the action should have been dismissed in the trial court because "[b]oth sides are asking for the same thing, and everybody is interested in the same kind of judgment." *Id.*

16.     This case is no different. This is a "suit made to order" in which "both sides are asking for the same thing"—a judgment that extinguishes the claims of millions of nonparty class members, including minors. Epic Games evidently picked the counsel it wanted to settle with (counsel who had never litigated any of the claims the settlement purports to resolve), got the deal it wanted, resolved the individual claim of the plaintiff in the one class case that was actually pending, agreed on a form of complaint, and then had the stipulated complaint filed here—in a forum where none of the relevant prior litigation was ever pending—where everyone agreed that it would never actually be litigated. Epic Games has never moved to dismiss, answered, or done anything other than file motions for admission pro hac vice. The only substantive papers filed by any of the parties are unopposed papers seeking approval of the settlement. This is a collusive suit, and it is not justiciable here. *See also North Carolina*

7

*Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 450, 206 S.E.2d 178, 189 (1974) ("The individual citizens-taxpayers have abandoned any vestige of hostility which might have created a justiciable controversy . . . by joining in plaintiffs' prayer for relief without denying any substantial allegations of the complaint.").

17.    These concerns weigh heavily here because Plaintiffs and Epic Games jointly seek to foreclose the rights of millions of absent class members. That is very often the reason collusive suits are filed—to affect the rights of nonparties—and an important reason why courts hold that collusive suits are not justiciable. *See generally* 13 Richard D. Freer and Edward H. Cooper, *Federal Practice and Procedure*, § 3530 (3d ed. 2020) ("Like principles apply to collusive litigation in which the parties, although formally independent, are cooperating to achieve the same result. Again, the purpose of cooperative pursuit of a decree is frequently to affect the interests of nonparties.").[1] This case should be dismissed.

18.    Plaintiffs and Epic Games are, of course, far more aware than Intervenors of the underlying facts and circumstances that led to the settlement, the preparation of the Stipulated Complaint, and the proceedings in this Court. To the extent that their responses to this motion create any potential disputes with respect to the alleged facts or identify purported factual deficiencies in this motion, Intervenors are entitled to take discovery into the relevant facts and respectfully request permission from the Court to do so.

## PRAYER FOR RELIEF

1.    The Court permit Intervenors to take discovery regarding the proposed settlement in this case;

---

[1] Federal authority can be instructive on North Carolina justiciability doctrines. *See Committee to Elect Dan Forest*, 2021 NCSC 6, ¶ 13, 853 S.E. 3d at 705 (citing *Goldston v. State*, 361 N.C. 26, 35, 637 S.E.2d 876 (2006)).

8

2.    The Court dismiss this action for lack of subject-matter jurisdiction; and

3.    For such other and further relief as the Court deems just and proper.

WHEREFORE, Intervenors K.W., by and through his guardian, Jillian Williams, Jillian

Williams individually, and J.M ., by and through his guardian, Maria Garcia, respectfully pray the

Court for the following relief:


This the 6th day of April 2021.


D.J. O'Brien III
N.C. State Bar No. 35481
Eric F. Fletcher
N.C. State Bar. No. 54105

*Attorneys for K.W. and Jillian Williams*


OF COUNSEL:
**BROOKS, PIERCE, MCLENDON,**
**  HUMPHREY & LEONARD, L.L.P.**
150 Fayetteville St.
Suite 1700
Raleigh, NC  27601
Telephone: 919-839-0300
Facsimile:  919-839-0304

Samuel J. Salario, Jr. (pro hac vice to be applied for)
**BAY ADVOCACY PLLC**
1700 S. Mac Dill Avenue
Suite 300
Tampa, FL  33629
Telephone: 813-251-6263


9