MATTHEW J. ADLER (SBN 273147)
Matthew.Adler@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111-4180
Telephone:     415-591-7500
Facsimile:     415-591-7510

JEFFREY S. JACOBSON (*pro hac vice*)
Jeffrey.Jacobson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036-2714
Telephone:     212-248-3140
Facsimile:     212-248-3141

Attorneys for Defendant
EPIC GAMES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| K.W., a minor and through K.W.'s guardian, Jillian Williams, and JILLIAN WILLIAMS, individually, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Defendant. | Case No. 3:21-cv-00976-CRB<br><br>**DEFENDANT EPIC GAMES, INC.'S REPLY IN SUPPORT OF MOTION TO (1) DISMISS FOR LACK OF STANDING PURSUANT TO F.R.C.P. 12(B)(1) OR, IN THE ALTERNATIVE, (2) COMPEL INDIVIDUAL ARBITRATION**<br><br>Date:    April 29, 2021<br>Time:    10:00 a.m.<br>Ctrm:    6 – 17th Floor<br>Judge:   Hon. Charles R. Breyer<br><br>Action Filed:    February 8, 2021<br>Trial Date:      None set |

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY ISO MOTION TO
DISMISS OR COMPEL ARBITRATION

CASE NO. 3:21-CV-00976-CRB

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

    I.    The Rule 12(b)(6) Decision in the Failed White Matter Does Not Help Plaintiffs. ........................................................................................................... 2

    II.    Plaintiffs Made No Purchases From Epic Games and Therefore Lack Standing. ............................................................................................................ 3

    III.    Epic Games' Refund To Plaintiffs Is A Second Reason They Lack Standing. ............................................................................................................ 6

    IV.    The Court Should Compel Arbitration of Any Claims It Does Not Dismiss. ........ 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Epic Games, Inc. v. Apple, Inc.*,
  No. 4:20-cv-5640-YGR (N.D. Cal.)..................................................................................4

*Grube v. Amazon.com, Inc.*,
  No. 16-cv-126-LM, 2017 WL 3917602 (D.N.H. Sept. 6, 2017) ................................................6

*Heidbreder v. Epic Games, Inc.*,
  438 F. Supp. 3d 591 (E.D.N.C. 2020)..................................................................................10

*I.B. v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ..................................................................................5, 7

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016)..................................................................................10, 11

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ..................................................................................7

*R.A. v. Epic Games, Inc.*,
  No. 5:19-cv-25-BO, 2020 WL 865420 (E.D.N.C. Feb. 20, 2020)..................................................................................7

*T.K. v. Adobe Sys., Inc.*,
  No. 17-CV-4595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018)..................................................................................5, 7, 8

*White v. Epic Games, Inc.*,
  No. 19-cv-3629-YGR, 2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) ..................................................................................4, 5, 6

**STATUTES, RULES & REGULATIONS**

Cal. Fam. Code § 6710..................................................................................1

Fed. R. Civ. P. 12(b)(1) ..................................................................................2

Fed. R. Civ. P. 12(b)(6)..................................................................................2

Fed. R. Civ. P. 68 ..................................................................................7

**OTHER AUTHORITIES**

James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors' Privilege to Disaffirm Online Contracts*, 2 UC IRVINE L. REV. 627, 651 n. 115 (2012)..................................................................................6

Restatement (Third) of Agency § 3.05, cmt. B, illus. 1 (2006) ..................................................................................6

**INTRODUCTION**

The issues on this motion are simple and straightforward: Plaintiffs Jillian Williams and her minor son K.W. premise all of their claims on allegations that K.W. "contracted" with Defendant Epic Games, Inc. ("Epic Games") to make in-game purchases from Epic Games while playing *Fortnite*, made those purchases with "his own money," and wishes to exercise his right under California Family Code § 6710 to disaffirm his "contracts." The problem for Plaintiffs is that this premise is false, and they now have admitted it is false. Neither Jillian Williams nor K.W. made any purchases from Epic Games at all, and K.W. made no purchases using "his own money." Thus, Plaintiffs have no standing to assert any of their causes of action.

In two purchases that K.W.'s grandmother made from Epic Games, and several purchases that K.W.'s grandmother and father—and, in one case, Ms. Williams—made from non-parties Sony Interactive Entertainment, LLC ("SIE") and Microsoft Corp., K.W.'s only role was as a typist. By K.W.'s admission, he told his parents or his grandmother "what [he] wanted to buy and how much it cost," they agreed to buy the items for him, and they handed him their credit cards to use. K.W. typed his parents' or grandmother's credit card information into a payment interface and completed those purchases on his relatives' behalf and with their express permission. *See* Declaration of K.W. ("K.W. Declaration," Dkt. No. 30-2) ¶¶ 9-11. In no case from any jurisdiction has a court held that a minor can disaffirm transactions under circumstances remotely like these.

Even if disaffirmation was an option for K.W., his claim for it would be moot. Epic Games already has refunded all monies that K.W.'s relatives paid for in-game transactions both to Epic Games and to third parties. *See* Declaration of Jeffrey S. Jacobson in Support of Motion to Dismiss, or to Compel Arbitration ("Jacobson Declaration," Dkt. No. 23-1) ¶¶ 7-8. Plaintiffs argue that this was a "pickoff" attempt of a proposed class plaintiff. It was not. Although Plaintiffs falsely alleged that they sought and were refused a refund before they sued, they have admitted now that their lawsuit was Epic Games' first notice of their desire to disaffirm. Epic Games responded to that request promptly and honored it. Plaintiffs' receipt of the proceeds of K.W.'s disaffirmation moots all of their claims, as another court held recently in similar circumstances.

1    Plaintiffs have yet another fatal standing problem.  The declaratory judgment Plaintiffs are
2    seeking has no prospective application.  Epic Games put procedures in place a year ago to prevent
3    minors from making any purchases with their own money.  As for purchasers before those changes,
4    the nationwide class action settlement to which Epic Games has agreed, if approved, provides
5    specific compensation options for minors who made past purchases and wish to disaffirm them.  If
6    and to the extent the Court decides not to dismiss Plaintiffs' claims, Epic Games has moved to stay
7    this case pending the outcome of those North Carolina settlement proceedings.

8    A final reason why this Court should dismiss Plaintiffs' claims is that they agreed to
9    arbitrate them.  The *Fortnite* End User License Agreement ("EULA"), which compels arbitration
10   of disputes, clearly and conspicuously requires acceptance by an adult, and the EULA was accepted
11   in K.W.'s account on nine occasions.  Plaintiffs' opposition includes equivocal testimony from
12   K.W. that he does not remember how many times he accepted the EULA and no testimony at all
13   from Ms. Williams or K.W.'s father denying that they accepted it.  This does not suffice to evade
14   an obligation to arbitrate, and Plaintiffs offered no other defenses to the EULA's enforceability.

15   For all of these reasons, as set forth in Epic Games' opening brief and discussed further
16   below, the Court should dismiss Plaintiffs' complaint for lack of standing or, in the alternative,
17   compel them to arbitrate their claims on an individual basis.

18   **I.    The Rule 12(b)(6) Decision in the Failed *White* Matter Does Not Help Plaintiffs.**

19   Plaintiffs' primary defense to dismissal of their claims is that the court in the unrelated
20   matter of *White v. Epic Games, Inc.*, No. 4:19-cv-3629-YGR (N.D. Cal.), partially denied Epic
21   Games' Rule 12(b)(6) motion to dismiss at the pleading stage.  This case, however, is very different
22   from *White*, and this is a Rule 12(b)(1) motion, not a Rule 12(b)(6) motion.  The standing problems
23   that took time to develop in *White*, but which eventually caused that case to fall apart, are apparent
24   in *this* case right now:  These Plaintiffs bought nothing from Epic Games.

25   *White* began with a minor plaintiff—represented, as Plaintiffs are here, by the OneLLP law
26   firm—who claimed to have purchased in-game items from Epic Games using his "own money."
27   That claim was as false in *White* as it is here, and Epic Games demonstrated this as the litigation
28   progressed.  C.W. there, like K.W. here, used a relative's payment accounts to make his purchases,

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY ISO MOTION TO
DISMISS OR COMPEL ARBITRATION         - 2 -         CASE NO. 3:21-cv-00976-CRB

1  with their permission. C.W. also broke his word to the Court that he would not play *Fortnite* in the
2  future. He resumed his play, reaccepted the *Fortnite* EULA, and thus nullified his basis for having
3  avoided the requirement to arbitrate. After Epic Games provided this purchase history and play
4  information to plaintiffs' counsel in *White*, they filed an extraordinary "Notice Regarding Plaintiff
5  C.W.'s Activity" (*White* Dkt. No. 92, dated Dec. 11, 2020), acknowledging that "Minor Plaintiff
6  C.W. may not be the best available candidate to represent the class." Plaintiffs' counsel in *White*
7  were attempting to involve other plaintiffs in the case to serve as potential class representatives, but
8  the parties entered settlement discussions instead and those new plaintiffs joined the *Zanca*
9  settlement in North Carolina. *White* was voluntarily dismissed once the parties signed the *Zanca*
10 settlement agreement. *See White* Dkt. No. 97 (Notice of Voluntary Dismissal dated Jan. 8, 2021).

The *White* case, therefore, was not "moving ahead," as Plaintiffs assert. Plaintiffs' Opposition to Motion to Dismiss/Compel ("Pl. Opp.," Dkt. No. 30) at 1-2. Viewed most charitably, *White* was being reset with new plaintiffs who would have been subject to a new motion to compel arbitration and a new motion to dismiss based on their own lack of standing, had the action not been voluntarily dismissed. Epic Games has since entered into the nationwide *Zanca* class action settlement with counsel in *White* (and in other cases) that will resolve disaffirmation claims on fair terms. As of this writing, no one has objected to that settlement.[1]

**II.     Plaintiffs Made No Purchases From Epic Games and Therefore Lack Standing.**

Epic Games demonstrated in its opening brief that neither K.W. nor Jillian Williams ever purchased anything from Epic Games. Plaintiffs' opposition brief admits this to be true. The only two purchases from Epic Games made in K.W.'s account used a credit card belonging to a non-party whom K.W. has identified as his grandmother. According to K.W.'s declaration, he "would tell [his grandmother] what [he] wanted to buy and how much it cost," and his grandmother "let [him] use her payment information." K.W. Declaration ¶ 9. In no sense, however, were these

---

[1] On April 6, 2021, K.W., Ms. Williams, and two other people represented by Plaintiffs' counsel filed a "Motion to Intervene and To Dismiss" in *Zanca*, which Epic Games submitted to this Court as supplemental information. *See* Dkt. No. 31. Earlier today, Plaintiffs' counsel supplemented their motion with a 50-page brief to the *Zanca* court. Plaintiffs falsely contend in that brief, as they have falsely contended to this Court, that the *White* case was moving forward with no issues and that this case represents a seamless hand-off from *White*. Plaintiffs did not disclose to the *Zanca* court that their case is subject to motions to dismiss for lack of standing and to compel arbitration.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY ISO MOTION TO
DISMISS OR COMPEL ARBITRATION               - 3 -                CASE NO. 3:21-CV-00976-CRB

transactions with Epic Games using "K.W.'s own money," as Plaintiffs falsely alleged. Compl. ¶ 44. They were transactions between Epic Games and K.W.'s grandmother, where K.W.'s only role was typing his grandmother's payment information into the transaction interface with her permission. It is of no moment that K.W. may or may not have dealt separately with his grandmother, perhaps giving her "money [he] had" or "having her take it from money or gift cards that she was holding for [him]," or perhaps not, with her "let[ting him] use her payment information without paying her back." K.W. Declaration ¶ 9. Plaintiffs' brief does not cite, nor would they be able to cite, any authority supporting a minor's right to "disaffirm" a transaction in which the minor's only role was keying in an adult's credit card number with the adult's permission.

K.W.'s relatives also transacted with non-parties SIE and Microsoft. Plaintiffs have no possible claim against Epic Games for those transactions even had K.W. himself made them, but he did not. These were transactions on a marketplaces operated by SIE and Microsoft, on which K.W. or an adult acting on K.W.'s behalf would have had to establish a separate account and accept a separate End User License Agreement with SIE and Microsoft that have their own arbitration requirements. Indeed, on March 30, 2021, Judge Donato compelled arbitration of another plaintiff's claims against SIE arising from that other plaintiff's alleged purchase of *Fortnite* in-game items on SIE's marketplace. *See Crawford v. Sony Interactive Ent'mt LLC*, No. 3-20-cv-1732-JD, Dkt. No. 19 (Order re: Arbitration dated Mar. 30, 2021) (attached as Exhibit A).

Plaintiffs contend that they may sue Epic Games over transactions with third parties because Epic Games receives a share of the revenue from these transactions.[2] Here, too, however, Plaintiffs

---

[2] In *White v. Epic Games, Inc.*, No. 19-cv-3629-YGR, 2020 WL 5257572, at *1 (N.D. Cal. Sept. 3, 2020), the court cited Epic Games' antitrust complaint in *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-cv-5640-YGR (N.D. Cal.) (Dkt. No. 1). In Paragraph 3 of that complaint, Epic Games referred to Apple's "anti-competitive restraints and monopolistic practices in markets for . . . (ii) the processing of consumers' payments for digital content, . . . prevent[ing] software developers from reaching [users] unless they go through a single store controlled by Apple, the App Store, where Apple extracts an oppressive 30% tax on the sale of every app." In Paragraph 10, Epic Games alleged that "Apple coerces all app developers . . . to use exclusively Apple's own payment processing platform for all in-app purchases," and "will not even offer iOS users the *choice* of additional payment processing options *alongside* Apple's." Neither of these allegations can fairly be characterized as an admission by Epic Games that it was a party to transactions between Apple and its users, and of course the allegations in a complaint against Apple have no relevance to transactions between Plaintiffs here and non-parties SIE and Microsoft. As shown in the document that Plaintiffs submitted as Exhibit A to the Declaration of Samuel Salario (Dkt. No. 30-1), "V-Bucks purchased on . . . PlayStation can only be spent on th[at] platform."

cannot contend—and the Complaint does not allege—that Epic Games was a *party* to these transactions. Nor can Plaintiffs cite authority supporting a minor's right to disaffirm a transaction to a company that was not a party to the transaction. One can purchase Nike shoes from a Foot Locker store. That does not mean one can disaffirm the purchase to Nike. Even if such a right might exist in theory, Plaintiffs have the same standing problem: K.W. did not transact with SIE or Microsoft with his "own money." As with the purchases from Epic Games, where K.W.'s only role was typing in the credit card number that his grandmother voluntarily gave him, K.W. did the same in his transactions from SIE and Microsoft. *See* K.W. Declaration ¶¶ 9-10.

Although Plaintiffs notably submitted no declaration from Ms. Williams, K.W.'s declaration suffices to show that the Complaint's claims about her are false, too. K.W.'s declaration is vague about the "one occasion" in which he used Ms. Williams' payment account to transact with SIE or Microsoft, rather than the payment accounts of his father and grandmother, who are not plaintiffs in this case. K.W. Declaration ¶ 10. Nevertheless, K.W. certainly does not say that he used his mother's account *without* her permission, as the Complaint alleges. *See* Compl. ¶ 45.

No case from any jurisdiction has allowed a minor to disaffirm purchases made using an adult's credit card *with* that adult's permission. None of the three cases in this District involving disaffirmation— *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012), *T.K. v. Adobe Sys., Inc.*, No. 17-CV-4595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018), or *White*, No. 19-cv-3629-YGR, 2020 WL 5257572, at *1 (N.D. Cal. Sept. 3, 2020)—featured a plaintiff who used a parent's account with permission. The plaintiffs in *I.B.* used their parents' accounts *without* permission. The plaintiff in *T.K.* was a 17 year-old who used her own debit card. In *White*, the minor plaintiff claimed he used his "own money" in the form of "gift cards," and the court did not yet know when ruling on Epic Games' dismissal motion that his claim in that regard was false.

Here, by contrast, K.W.'s only role was typing in his parents' or grandmother's name, address, and credit card information, each time with their full permission. These were not K.W.'s own transactions in any sense. At most, his parents or grandmother appointed K.W. as their agent to enter this information on their behalf. "The actions of the principal[s]" (here, K.W.'s grandmother, father, and mother) "demonstrated that the agent" (K.W., who made the purchases

with the adults' credit cards) "had the authority to act on behalf of the principal[s]." *Grube v. Amazon.com, Inc.*, No. 16-cv-126-LM, 2017 WL 3917602, at *6 (D.N.H. Sept. 6, 2017).

Whenever a parent authorizes a child to charge purchases with the parent's credit card, the minor is acting as the parent's agent with *actual* authority, and the parent is liable for those purchases. *See* Restatement (Third) of Agency § 3.05, cmt. B, illus. 1 (2006); James Chang & Farnaz Alemi, *Gaming the System: A Critique of Minors' Privilege to Disaffirm Online Contracts*, 2 UC IRVINE L. REV. 627, 651 n.115 (2012) ("When parents authorize minors to use their credit cards, they confer upon the minors the power to create additional obligations to pay between the cardholder—the parent—and the issuing bank [that] . . . the cardholder has no right to disaffirm due to [lack of] capacity.") Were this not the law, adults could escape liability for their transactions by having their children (or any child) place them. Although in *White*, 2020 WL 5257572, at *2 n.3, the court distinguished the Restatement because the plaintiff said he used his mother's credit card *without* her permission, that is not this case. K.W. now admits he used his relatives' accounts only with permission. *See* K.W. Declaration ¶¶ 9-11 (stating that his grandmother "let [him] use her payment information" and he "did not have [his] own debit card, credit card, or other way of paying"). Thus, the Restatement applies here. K.W. cannot disaffirm these transactions.

Indeed, K.W.'s declaration basically contradicts every allegation in the Complaint. The allegations that K.W. did not understand the cost of items he wanted to purchase (Compl. ¶¶ 21-24, 47); that he purchased items using stored payment methods that his parents did not know were stored (*id.* ¶ 24); that Epic Games "does not provide players with a history of their purchases" (*id.* ¶¶ 27, 48); that K.W.'s purchases were engendered by a lack of parental notification (*id.* ¶ 28), or that his parents "d[id] not know" about his transactions (*id.* ¶¶ 29-30, 37, 45); that K.W. made purchases with "his own money" without parental involvement (*id.* ¶¶ 31, 44); and that K.W. "attempted to cancel or seek a refund for certain purchases" (*id.* ¶ 49)—all were false. Now that Plaintiffs have conceded the truth, the Court should dismiss their claims for lack of standing.

### III.   Epic Games' Refund To Plaintiffs Is A Second Reason They Lack Standing.

Plaintiffs do not dispute that Epic Games has refunded to them every dollar they spent on *Fortnite* in-game transactions, regardless of who made those purchases and regardless of whether

Epic Games was a party to them. Epic Games did this within 24 hours of Plaintiffs having identified themselves and their *Fortnite* account information. *See* Jacobson Declaration ¶¶ 6-8. That is how disaffirmation is supposed to work: A minor communicates disaffirmation and the contractual counterparty either accepts or rejects it. Only if the counterparty rejects disaffirmation may the minor sue. In all of *I.B.*, *T.K.*, and *White*, the plaintiffs gave the defendants a pre-suit opportunity to provide a refund, which (unlike here) the Defendants all declined. Here, Plaintiffs *pleaded* having made a pre-suit request (*see* Compl. ¶ 49), but this was just another false claim that they now have retracted.

The Court, therefore, must treat Plaintiffs' lawsuit itself as their first and only assertion of disaffirmation. Plaintiffs' brief admits as much, arguing "that a statement in a complaint is sufficient to initiate a disaffirmation." Pl. Opp. at 7. In response, Epic Games accepted their disaffirmation promptly and provided a full refund, exactly as it did in *R.A. v. Epic Games, Inc.*, No. 5:19-cv-25-BO, 2020 WL 865420 (E.D.N.C. Feb. 20, 2020), which caused the *R.A.* court to dismiss that plaintiff's class action claims. Plaintiffs here admit that the *R.A.* plaintiff attempted the same argument they are making about Epic Games' acceptance of their disaffirmation being just an "unaccepted offer of judgment." Pl. Opp. at 8 n.8. The *R.A.* court rejected that argument, however, and this Court should reject it, too.

This case simply is not the equivalent of "picking off" a class plaintiff with an unaccepted Rule 68 offer of judgment, as the defendant attempted in *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011). In *Pitts*, the Rule 68 offer was just that—an offer—and the plaintiff rejected it. An invocation of disaffirmation, by contrast, is itself an offer to the contractual counterparty and an invitation to accept that offer by honoring the disaffirmation. Epic Games accepted K.W.'s disaffirmation. Epic Games communicated to K.W. that it disputed his right to disaffirm given the circumstances here, but the bottom line is that K.W. got the money he requested. K.W. cannot now proceed to litigate his claim regarding his right to disaffirm. His claim is moot.

Plaintiffs also argue that it "would serve a useful purpose" to nevertheless allow them to pursue a declaratory judgment that K.W. had a statutory right to disaffirm. Pl. Opp. at 7, *quoting T.K.*, 2018 WL 1812200, at *13. Leaving aside that Plaintiffs have no standing to seek this relief

1  because K.W. did not transact with Epic Games using his own money, the "useful purpose" the
2  *T.K.* court had in mind was to "govern future interactions between Adobe and" minors making
3  purchases. *Id.* Here, however, Epic Games already has (1) entered into a class action settlement
4  pursuant to which any minors who purchased V-Bucks or other in-game items in the past may
5  disaffirm those purchases and receive benefits from the settlement, and (2) changed its sales
6  practices to require adults to enter payment information and to confirm when doing so that they are
7  over 18 and an authorized user of the card being used. Accordingly, Plaintiffs cannot assert any
8  need for a declaration that would "govern future interactions."

9  Declaratory relief is not necessary for past purchases or future ones. If Plaintiffs' argument
10 is that this Court should not consider the *Zanca* settlement and its impact on past transactions unless
11 and until the *Zanca* court grants it final approval, Epic Games has asked this Court to stay this case
12 until after the *Zanca* Fairness Hearing. As for future purchases, Plaintiffs do not seem to dispute
13 (nor could they) that Epic Games has changed its sales practices.[3] Plaintiffs incant the standard of
14 "capable of repetition yet evading review" (Pl. Opp. at 6), but they do not identify what might be
15 "repeated" now that minors cannot make purchases at all from Epic Games—at least, not without
16 affirmatively misrepresenting their age and authority, in a manner that should preclude them from
17 asserting disaffirmation. Plaintiffs suggest that minors may make purchases from Epic Games by
18 purchasing prepaid credit cards (*see* Pl. Opp. at 9), but this is exactly why Epic Games now requires
19 anyone entering payment information to confirm that he or she is an adult. *See* Declaration of John
20 Farnsworth (Dkt. No. 23-3) ¶¶ 9-10. Plaintiffs' brief appears to admit that if a minor falsely
21 declares himself to be an adult, or to be acting on behalf of an adult, Epic Games may rely on that
22 representation. *See* Pl. Opp. at 11.

---

[3] As Plaintiffs correctly note, *Fortnite* "is rated T for Teen by the Entertainment Software Ratings Board." Pl. Opp. at 3. Epic Games does not dispute that some of its players are teenagers or that the game is appropriate for teenagers. One can play *Fortnite* without making any purchases in the game, however, and Epic Games has taken numerous steps to promote parental controls over purchases. Most recently, as Epic Games has explained, it conspicuously tells prospective purchasers that only adults may enter payment information, and the payment interface requires purchasers to affirm that they are adult authorized users of the payment account information being entered. *See* Declaration of John Farnsworth (Dkt. No. 23-3) ¶¶ 9-10. These changes were far more than "cosmetic." Pl. Opp. at 12. Purchasers must enter the CVV number on a credit card, which means they must have physical access to the card, as K.W. admits he did.

### IV. The Court Should Compel Arbitration of Any Claims It Does Not Dismiss.

Plaintiffs do not dispute that Epic Games forms agreements to arbitrate with its players and purchasers or that the arbitration agreement encompasses their claims. Their only asserted defenses to arbitration are that (1) K.W. has disaffirmed his acceptance of the EULA, and (2) Epic Games supposedly has waived its entitlement to compel arbitration. Both arguments are wrong.

In *White*, 435 F. Supp. 3d 1024, 1034-38 (N.D. Cal. 2020), a single acceptance of the *Fortnite* EULA by a minor plaintiff was at issue. The minor plaintiff in *White* submitted a declaration stating that he had accepted the EULA on one occasion, and the minor's mother submitted a declaration affirming that she had not accepted it. The minor alleged (albeit falsely) that he had transacted with Epic Games using his "own money," and at the time, Epic Games did not require those entering payment information to affirm that they are adults and reiterate their acceptance of the EULA. The *White* plaintiff also confirmed that he "has no intention of playing Fortnite in the future," *id.* at 1037, although he later resumed his play and therefore likely would have been compelled into arbitration had the *White* case not been voluntarily dismissed.

This case is very different. A user of the player account K.W. has identified as being his accepted the *Fortnite* EULA on eight separate occasions between March 2019 and September 2020. *See* Farnsworth Declaration (Dkt. No. 23-3) ¶ 13. At least one of the purchases in K.W.'s account came after Epic Games required the purchaser to certify his or her status as an adult and to confirm acceptance of the EULA and its arbitration requirement. In total, that is at least ***nine times*** that someone accepted the EULA in relation to the account in which K.W. played.

Plaintiffs have submitted only equivocal testimony from K.W. that he "do[es] not remember" how many times he clicked through the *Fortnite* EULA. K.W. Declaration ¶ 5. They submitted no testimony from Ms. Williams, or from K.W.'s father or grandmother, all of whose credit cards K.W. claims to have used with permission, and any of whom may have accepted the EULA in connection with a purchase or supervised K.W. while he did so. *See id.* ¶¶ 9-11. K.W. also said only that he "do[es] not have any plans to play *Fortnite* in the future," which is far less than a promise not to do so. Accordingly, even if K.W. were able to disaffirm his acceptance of the EULA with respect to whatever number of acceptances he made himself (the number he does

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EPIC GAMES, INC.'S REPLY ISO MOTION TO
DISMISS OR COMPEL ARBITRATION                - 9 -              CASE NO. 3:21-CV-00976-CRB

1   not remember), Plaintiffs have not shown that K.W. was responsible for all **nine** of the EULA
2   acceptances in his account and has the ability to disaffirm all nine. For this reason, Plaintiffs'
3   cannot distinguish *Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591 (E.D.N.C. 2020), which
4   compelled arbitration in circumstances similar to theirs. And Plaintiffs' statement that "[t]his case
5   does not involve an adult suing on the adult's cause of action," (Pl. Opp. at 10), as *Heidbreder* did,
6   is simply wrong. Ms. Williams is very much suing on her own cause of action. *See* Compl. at
7   Introduction ("Plaintiff Jillian Williams individually . . ."), ¶ 5 (Ms. Williams "brings this suit . . .
8   on her own behalf"); ¶¶ 66-71, 80-93 (asserting causes of action on behalf of Ms. Williams).

9         As for supposed "waiver," Plaintiffs' argument is that Epic Games cannot enforce its
10  arbitration agreement against Plaintiffs because it has agreed to the *Zanca* settlement in court. The
11  plaintiffs in *Zanca*, however, include one person who asserted his claims before Epic Games
12  adopted an arbitration requirement in its EULA and others who were seeking intervention in *White*,
13  where the court already had denied a motion to compel arbitration. Settling those claims in the
14  manner contemplated in *Zanca*—which includes the ability for any player to come forward with
15  claims and receive benefits in a fashion even more streamlined than arbitration—is not at all
16  inconsistent with enforcing the arbitration requirement against anyone who does not wish to take
17  advantage of that procedure. Plaintiffs admit they "are not saying that a defendant's attempt to
18  settle a class action is by itself inconsistent with an invocation of arbitration rights," and Epic
19  Games has zealously sought enforcement of its arbitration agreement against every plaintiff who
20  has asserted a claim against the company since it adopted the arbitration requirement in its EULA.

21        Any dispute over enforceability of the arbitration agreement, moreover, is for the arbitrator
22  to decide. Plaintiffs' brief did not dispute that questions of K.W.'s ability to disaffirm the contract
23  can and should be resolved by the arbitrator. Plaintiffs contended only that the question of *waiver*
24  is for the Court. *See* Pl. Opp. at 12. The case they cited, however—*Martin v. Yasuda*, 829 F.3d
25  1118 (9th Cir. 2016)—does not support their argument. The issue in *Martin* was whether a District
26  Court may decide waiver based on "litigation ***conducted before the district court***" prior to the
27  invocation of arbitration rights. *Id.* at 1123 (emphasis added). Plaintiffs here, by contrast, are
28  asking this Court to adjudicate "waiver" based upon Epic Games' decision to settle another case,

in another court, involving different plaintiffs, some of whom were not subject to arbitration requirements. In *this* District, in this case and in *White*, Epic Games immediately invoked and strenuously sought to enforce its arbitration agreement. There has been no waiver.

Just as importantly, Plaintiffs' statement that the *Zanca* settlement "avoid[s] individual arbitrations with class members" (Pl. Opp. at 13) is wrong. Anyone who wishes to do so may opt out of the *Zanca* settlement and bring an individual dispute using the fair, enforceable, and enforced process set forth in the EULA. Plaintiffs themselves could have opted out of the *Zanca* settlement but apparently have decided not to do so. Instead, Plaintiffs are pursuing a class action, as the EULA forbids, and Epic Games has promptly asserted its arbitration rights under the EULA.

In a final attempt to avoid arbitration, Plaintiffs ask for discovery. *See* Pl. Opp. at 15. This is backwards. Plaintiffs know the details of their purchases from third parties; Epic Games does not. Plaintiffs know the details of their EULA acceptance and elected not to provide that information to the Court (beyond K.W.'s testimony that he "does not remember"). Epic Games' payment interface is public-facing; Plaintiffs can review it without need of discovery. The Court has before it everything it needs to decide Epic Games' arbitration motion.

## **CONCLUSION**

Based on the foregoing, and as stated in Epic Games' opening brief, Epic Games respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of standing, or else compel the matter to arbitration pursuant to the terms of the duly accepted EULA.

Dated: April 12, 2021

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Jeffrey S. Jacobson*
    Jeffrey S. Jacobson (*pro hac vice*)
    Matthew J. Adler

Attorneys for Defendant
EPIC GAMES, INC.

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDI CRAWFORD,<br><br>    Plaintiff,<br><br>    v.<br><br>SONY INTERACTIVE ENTERTAINMENT LLC,<br><br>    Defendant. | Case No. 3:20-cv-01732-JD<br><br>**ORDER RE ARBITRATION**<br><br>Re: Dkt. No. 19 |

Plaintiff Brandi Crawford alleges that her minor son spent more than $1,000 without her permission in the Fortnite video game hosted on the PlayStation Network (PSN) operated by defendant Sony Interactive Entertainment LLC (SIE). Crawford sued on behalf of herself and a putative class of other parents whose kids spent money in SIE's games without permission. Crawford's minor son is not a party, and she has not been designated a guardian ad litem. She alleges declaratory relief and a variety of California state law claims. *See generally* Dkt. No. 1.

SIE requests an order sending the case to arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 2. Dkt. No. 19. The motion is granted, and the case is stayed pending further order.

The parties' familiarity with the record is assumed. Crawford forthrightly acknowledges that "[d]efendants are correct that Plaintiff is bound by the arbitration and class action waivers for transactions in which she engaged." Dkt. No. 22 at 1.[1] Crawford accepted SIE's System Software Licensing Agreement (SSLA) and Terms of Service and User Agreement (ToSUA), both of which contain agreements to arbitrate disputes and waivers of proceeding on a class action basis. She

---

[1] The complaint names one defendant, SIE, so the use of the plural by Crawford appears to be accidental.

1   does not challenge SIE's evidence showing that she agreed to the SSLA and ToSUA as conditions
2   of operating the console and accessing the PSN.  *See* Dkt. No. 19-1 ¶¶ 3-6.  Crawford also does
3   not dispute that these agreements were made in connection with the console used by her son, and
4   that a fair proportion of the PSN charges were incurred in Crawford's own account.  *Id.* ¶ 7.

5   The SSLA and ToSUA each have broad dispute resolution clauses that impose bilateral
6   arbitration requirements on SIE and consumers under the FAA.  *See* Dkt. No. 19-1, Exh. 1 ¶ 9
7   (SSLA); Exh. 2 at p. 17-19 (ToSUA).  Each agreement defines "disputes" to include challenges to
8   "the validity, enforceability or scope" of the arbitration clause.  *Id*.  Each agreement expressly
9   incorporates the Consumer and Commercial Rules of the American Arbitration Association
10  (AAA) to govern the arbitration proceedings.  *Id*.  Each agreement also contains a class action
11  waiver.  *Id*.

12  Crawford has not raised any objections to arbitration on grounds of contract formation, or
13  substantive or procedural unconscionability.  *See* Dkt. No. 22.  Her sole argument against
14  arbitration is that her minor son could not be bound by a contract under California law.  *Id*. at 2-6.
15  That may be, but it is beside the point for present purposes.  That is because the complaint alleges
16  a dispute entirely between Crawford and SIE.  Crawford is the only named plaintiff, and the only
17  injury alleged is the money she personally lost after unsuccessfully seeking a refund from SIE.
18  *See* Dkt. No. 1 ¶¶ 51, 58.  That dispute is wholly within the scope of the arbitration clause, as
19  Crawford recognizes.

20  Consequently, a referral to arbitration is required.  Under the FAA, "'the district court's
21  role is limited to determining whether a valid arbitration agreement exists and, if so, whether the
22  agreement encompasses the dispute at issue.'"  *See Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d
23  1233, 1239 (N.D. Cal. 2019) (quoting *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d
24  1010, 1012 (9th Cir. 2004)).  "If the party seeking to compel arbitration establishes both factors,
25  the district court 'must order the parties to proceed to arbitration.'"  *Id*. (quoting *Lifescan*, 363
26  F.3d at 1012).  "Any doubts about the scope of arbitrable issues should be decided in favor of
27  arbitration."  *Id.* (internal citations omitted).  To the extent any questions remain about the
28  validity, enforceability, or interpretation of the arbitration clauses, the parties' incorporation of the

2

AAA rules has delegated those issues to the arbitrator.  *Id*. at 1241; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  Crawford did not specifically challenge the delegation clause, and so it will be enforced.  *See Williams*, 417 F. Supp. 3d at 1241.

The case is ordered to arbitration.  It is stayed and administratively closed pending further order.  *See* 9 U.S.C. § 3.  The parties are directed to file joint status reports every 90 days, and to promptly advise the Court of a settlement or other resolution.

**IT IS SO ORDERED.**

Dated: March 30, 2021

JAMES DONATO
United States District Judge